226 N.J. Super. 599 (1988)
545 A.2d 226
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT ONYSKO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 5, 1988.
Decided July 22, 1988.
Before Judges PETRELLA and O'BRIEN.
Clare M. Pessolano, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender *600 of New Jersey, attorney; Jeffrey Steinfeld, Assistant Deputy Public Defender, of counsel and on the brief.)
Ulrike M. Bergin, Assistant Prosecutor, argued the cause for respondent (Larry J. McClure, Bergen County Prosecutor, attorney; Ulrike M. Bergin, of counsel and on the brief.)
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from his convictions of burglary (N.J.S.A. 2C:18-2) upon which he was sentenced to a five-year term with a two-and-one-half year period of parole ineligibility, attempted burglary (N.J.S.A. 2C:5-1 and 2C:18-2) upon which he was sentenced to a consecutive term[1] of five years with a two-and-one-half year period of parole ineligibility, and theft (N.J.S.A. 2C:20-3) upon which he was sentenced to a concurrent term of three years. Appropriate penalties payable to the Violent Crimes Compensation Board were also imposed. We reverse and remand for a new trial.
On July 18, 1985 at approximately 1:30 p.m., the victim returned to his condominium in Mahwah, where he came upon defendant and another "working on" his neighbor's door with a large screwdriver. When the victim appeared, defendant and the other man left the scene. In his condominium the victim discovered his gold watch, several gold chains, a penknife and a pearl tie clip missing. When the police responded to his call, they discovered the victim's apartment door had a pry mark on the deadlock and two or three pry marks on the lock mechanism, indicating the door had been pried away from the jamb to be opened. Examination of the next-door neighbor's door, where the victim had observed defendant with a screwdriver, *601 had two similar pry marks on it. The victim gave the police a full description of defendant, including his disheveled appearance with shabby, dirty, unkempt clothes.
On July 31, 1985, a Mahwah police officer arrested defendant on another charge. Because he was aware of the burglary and the description given by the victim, he prepared a photographic lineup. The victim picked defendant's photograph, but requested that he have an opportunity to hear defendant talk and see his mannerisms in order to be absolutely sure. As a result, a physical lineup was conducted on August 2, at which the victim again identified defendant.
At trial, defendant, who has an extensive criminal record, did not testify. However, he presented the testimony of his mother that she had been with him in Jersey City until he boarded a bus for Hackensack at 11:55 a.m. Defendant also presented his probation officer who testified that defendant had been at her office on that day from 2:00 or 2:15 p.m. until approximately 5:00 p.m. She also described defendant as being unshaven, needing a bath, and looking like he had been drinking.
During the course of the trial, a series of photographs comprising the photographic lineup including a photograph of defendant were received into evidence. The photograph of defendant was a mug shot which on the reverse side contained the following information:

*602
 MAHWAH POLICE DEPT.
 Mahwah, N.J.
NAME ROBERT J. ONYSKO 
ALIAS Timothy Eggers 
CRIME Violation of probation 
AGE 39 HEIGHT 5'10" 
WEIGHT 170 BUILD thin 
HAIR brown EYES brown 
COMP Superior Ct. Bergen County 
BORN Jersey City 4/25/46 
OCCUP. burglar 
DATE OF ARREST 7/31/85 
OFFICER McGill 
REMARKS ___________________________________________________________________

Subsequent to the trial, defense counsel learned that at least one of the jurors had read the information appearing on the reverse side of defendant's photograph. This circumstance formed the basis of defendant's motion for a new trial, including a request that the trial judge examine that juror and the other jurors to ascertain the effect this information had on their verdict. At the direction of the trial judge, an affidavit[2] was obtained from the juror in which he stated:
During the deliberation, I observed seven (7) mug shots, totally unsecured, which were held on by one staple. These mug shots were admitted as evidence in the above case. I was able to flip the mug shots over. On the reverse side of the mug shots the names, date of births, and occupations were listed. In the occupation slot of six (6) mug shots, it was blank. On Robert Onysko's mug shot, the occupation read `burglar.' `Burglar' was typed in as Mr. Onysko's occupation. All twelve (12) jurors saw this. To my knowledge, it did not affect anyone's judgment. It did not affect my decision.
Defendant in this case elected not to testify to avoid having his extensive criminal record disclosed before the jury. See State v. Sands, 76 N.J. 127 (1978). The State concedes that the *603 information contained on the back of defendant's photograph was extraneous matter which would have the capacity to prejudice the jury's deliberations. Defendant cites McDonald v. State, 351 N.W.2d 658, 660 (Minn. Ct. App. 1984), for the proposition that where a possibility exists that prejudicial material has been presented to the jury, the best procedure is to conduct a voir dire of the jury. However, more than a mere possibility of an improper influence must exist in order to meet the good cause requirement. See State v. Young, 181 N.J. Super. 463, 469 (App.Div. 1981), certif. den. 91 N.J. 222 (1982). "The `good cause' required by R. 1:16-1 to question a juror after a trial must be predicated upon the injection into the deliberation of some outside influence or event or proof [of] a juror who was tainted." State v. Jasuilewicz, 205 N.J. Super. 558, 569 (App. Div. 1985), certif. den. 103 N.J. 467 (1986). Such an investigation or inquiry is limited to the effect of the improper extraneous matter and would not include probing the mental processes of the jurors. Brandimarte v. Green, 37 N.J. 557, 563-565 (1962); see also Evid.R. 41.
Imparting information as to defendant's prior criminal record to the jury where he has elected not to testify would normally require a new trial. In State v. Rombolo, 89 N.J.L. 565, 569 (E. & A. 1916), a photograph of the defendant including information indicating he had previously been incarcerated for burglary was excluded as being unduly prejudicial. Rombolo was cited with approval in State v. O'Leary, 25 N.J. 104, 115 (1957), where a photograph was allowed into evidence only after the caption contained on the back of the photograph revealing prior criminal involvement had been expunged. It is not clear in the instant case why some effort was not made to expunge or at least cover the information on the back of defendant's photograph.
The trial judge denied defendant's motion for a new trial based upon these circumstances. Such a motion is addressed to the sound discretion of the trial judge whose determination will not be lightly disturbed by us. State v. Kociolek, 20 N.J. 92, *604 104 (1955). The trial judge's determination will not be reversed on appeal absent a clear abuse of his discretion and a showing that it has resulted in a miscarriage of justice under the law. R. 2:10-1; see also State v. Thompson, 142 N.J. Super. 274, 282 (App.Div. 1976).
In denying defendant's motion, the trial judge principally relied upon the fact that defendant himself had revealed to the jury that he had a prior criminal record when he produced his probation officer as a defense witness. The trial judge also characterized the testimony as "devastating" in light of the victim's firm identification of defendant as the person he saw working on his neighbor's door with a screwdriver, notwithstanding his alibi supported by the testimony of his mother and his probation officer. Defendant takes exception to the trial judge's characterization of the evidence as "devastating."
While defendant acknowledges that production of his probation officer as a witness did disclose to the jury that he had some prior offense, it did not disclose that his prior offense had been for similar crimes, nor that he had on occasion used an alias. Defendant cites:
The sharpest and most prejudicial impact of the practice of impeachment by conviction ... is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a "record" of past convictions, particularly if the convictions are for crimes similar to the one on trial, there is an obvious danger that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to the legitimate bearing of the past convictions on credibility. McCormick, Evidence, § 43 at 99 (3d ed. 1984). [Emphasis supplied.]
Relying upon United States v. Grayson, 166 F.2d 863, 867 (2nd Cir.1948), defendant observes that Judge Learned Hand said: "even a single alias  can serve no purpose but to arouse suspicion that the accused is a person who has found it useful and necessary to conceal his identity."
Thus, although defendant acknowledges that mere disclosure of his criminal record may not be prejudicial where he has offered the testimony of his probation officer, he argues that *605 the information disclosed here characterized him as a professional burglar by listing his occupation as "burglar," and that the use of an alias reflected the magnitude of his criminal propensities.
We agree. Although defendant has an extensive record, he denied his guilt in this case and supported his denial by significant alibi testimony. Obviously, testimony from a probation officer reflects that defendant has been convicted of crime, but does not support a conclusion that he has an extensive criminal record nor that his prior record included crimes similar to the crime with which he is charged in this case. Injection of his prior use of aliases and that he is characterized by the police as having an occupation as a "burglar" clearly reveals to the jury precisely that, that he is a "burglar" and thus guilty of the offense charged. Although the juror denied that this information affected his judgment and, to his knowledge, that it affected anyone else's judgment since all 12 jurors had seen the information, this denial is difficult to accept even if stated in good faith.
In light of our disposition, it is unnecessary for us to address defendant's contentions concerning his sentence.
NOTES
[1] We note that in the judgment of conviction the sentences imposed on counts one and two are concurrent, whereas at sentencing the judge stated they were to be served consecutively. See State v. Matlack, 49 N.J. 491 (1967) (concerning correction of clerical errors). In view of our decision we need not address this question.
[2] At the hearing on the motion for a new trial, defense counsel did not have the affidavit since it had not yet been signed by the juror. However, his representation as to the contents of the affidavit were accepted by the trial judge.