278 N.J. Super. 85 (1994)
650 A.2d 393
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD GOODE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 17, 1994.
Decided December 15, 1994.
*86 Before Judges DREIER and WEFING.
Susan Reisner, Public Defender, attorney for appellant (Thomas Menchin, Designated Counsel, of counsel and on the brief).
Clifford J. Minor, Essex County Prosecutor, attorney for respondent (Raymond W. Hoffman, of counsel and on the letter-brief).
The opinion of the court was delivered by WEFING, J.A.D.
Defendant was indicted and convicted of third degree possession of a controlled dangerous substance (N.J.S.A. 2C:35-10(a)(1)); third degree possession of a controlled dangerous substance with intent to distribute (N.J.S.A. 2C:35-5(b)(3)); third degree possession of a controlled dangerous substance with intent to distribute *87 within 1,000 feet of school property (N.J.S.A. 2C:35-7); third degree possession of a firearm without a permit (N.J.S.A. 2C:39-5(b)); and second degree possession of a weapon with intent to use it unlawfully (N.J.S.A. 2C:39-4(a)).
At sentencing, his convictions for possession of a controlled dangerous substance and possession with intent to distribute were merged into his conviction for possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property. For that crime, he was sentenced to four years in prison with a three-year parole disqualifier. For possession of a firearm without a permit, he was sentenced to a concurrent four-year term; for possession of a weapon with intent to use it unlawfully, he was sentenced to a concurrent ten-year term, with a three and one-third year parole disqualifier.
Defendant's arrest and convictions sprang from a search of the second floor apartment at 144 Elizabeth Avenue, Newark on March 23, 1990, pursuant to a search warrant issued on March 20, 1990. Police testified that, when they entered the apartment, defendant ran from the living room to a rear room. When seized, he was holding a pistol aimed at the floor. Within the apartment, police found fourteen foil packets containing cocaine, a triple beam scale and aluminum foil together with two other handguns. $624 in cash was confiscated.
Defendant testified to a significantly different version of the events. He maintained that, while he owned the building and operated a deli-candy store on the first floor, he did not live there. His residence, he contended, was in Irvington and the second floor of 144 Elizabeth Avenue was rented to a tenant. During testimony, he produced various items which displayed an Irvington address. He said the police arrived on March 15, 1990, not on March 23, 1990, and did not have a warrant. He said they forced the door to the apartment, since he did not have the key, and stole a quantity of items, including money and jewelry. He insisted *88 that any narcotics found in the apartment were not his, but rather belonged to the tenant.
On appeal, defendant raises the following arguments:
POINT I THE MISCONDUCT OF THE PROSECUTOR FROM OPENING THROUGH SUMMATIONS DEPRIVED DEFENDANT OF A FAIR TRIAL.
POINT II THE MOTION FOR JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE SHOULD HAVE BEEN GRANTED AS TO COUNT FIVE.
POINT III THE TRIAL JUDGE'S INSTRUCTION ON N.J.S.A. 2C:39-4A FAILED TO SPECIFY THE UNLAWFUL PURPOSE WHICH THE STATE ALLEGED DEFENDANT HAD AT THE TIME HE POSSESSED THE WEAPON (Not Raised Below).
POINT IV HIGHLY PREJUDICIAL "OTHER CRIMES" EVIDENCE WAS IMPROPERLY ADMITTED DURING THE TRIAL (PARTIALLY RAISED BELOW).
A) The Evidence of Prior and Subsequent Sales of Cocaine Was Not Relevant To The Issues At Hand.
B) The Court Erred In Failing To Hold A Hearing To Determine Whether The Other Crimes Did In Fact Occur (Not Raised Below).
C) The Court Erred In Failing To Balance The Probative Value Of The Evidence Against Its Potential For Prejudice (Not Raised Below).
D) The Court Erred In Failing To Charge Limiting The Use Of Other Crimes Evidence (Not Raised Below).
POINT V THE TRIAL COURT ERRED IN RULING DEFENDANT'S PRIOR CONVICTIONS COULD BE USED FOR IMPEACHMENT PURPOSES.
POINT VI DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE OF THE CUMULATIVE EFFECTS OF THE ERRORS WHICH OCCURRED DURING THIS TRIAL.
POINT VII THE SENTENCE IMPOSED ON COUNT FIVE WAS EXCESSIVE.
As to Points II, III and VII, the State agrees that defendant's conviction for possession of a weapon for an unlawful purpose must be reversed and his sentence set aside since the trial court's charge, although not objected to, was clearly insufficient under State v. Jenkins, 234 N.J. Super. 311, 560 A.2d 1240 (App. Div. 1989). We are satisfied, however, that defendant's remaining convictions must be reversed as well, for the prosecutor's remarks, from his opening statement through his closing arguments, were so egregiously unfair that defendant was, we are convinced, unable to obtain a fair trial from this jury.
*89 More than thirty years ago, Justice Francis wrote "[a]ppellate courts continue to be too much occupied in review of prosecutor's summations." State v. Thornton, 38 N.J. 380, 400, 185 A.2d 9 (1962) cert. denied sub nom. Thornton v. New Jersey, 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963). He concluded his remarks on the subject: "[w]e trust that this opinion marks the last time we shall have to deal with this subject." Ibid. Unfortunately, experience has proven Justice Francis's trust in vain. Rather, we have observed that "instances of prosecutorial excesses ... seem to come to this court with numbing frequency." State v. Acker, 265 N.J. Super. 351, 355, 627 A.2d 170 (App.Div.) certif. denied, 134 N.J. 485, 634 A.2d 530 (1993) (quoting State v. Watson, 224 N.J. Super. 354, 362, 540 A.2d 875 (App.Div.), certif. denied, 111 N.J. 620, 546 A.2d 537, cert. denied, sub nom. Watson v. New Jersey, 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566 (1988)).
We consider it necessary to set forth within this opinion a portion of the prosecutor's opening remarks and closing remarks. We do so not to lengthen this opinion but to demonstrate their particularly improper nature. Within his opening, the prosecutor said to the jury:
These charges are very serious, probably read and hear in the papers hundred to a thousand cases a year about drugs in your neighborhood. You're probably wondering what you can do to make a difference. This is finally your chance to make a difference. We're going to show you throughout this trial and make it easy for you to make a difference in your community because we're going to give you enough evidence to convict this defendant, Edward Goode.
The prosecutor's statement was clearly "nothing less than a call to arms which could only have been intended to promote a sense of partisanship incompatible with their (jurors') duties" State v. Holmes, 255 N.J. Super. 248, 251-2, 604 A.2d 987 (App.Div. 1992) (finding plain error in a prosecutor's reference to "the particular drug problem that we have in this country, particularly Newark ..." and referring to "the war on drugs.")
He then explained to the jury how a drug investigation is conducted and the use of controlled buys. He told the jury:

*90 As a result of that information they get that this person Eddie is dealing out of that location and is dealing cocaine. What the police do is that they decide if this reliable informant, what he says is true. They have the informant go in and make undercover buys. They're called controlled buys. The difference between a controlled and undercover buy is controlled buys deals with an informant who isn't a cop but works with a cop.
* * * * * * * *
As a result of certain information the police received from this particular person, they move in at that location and they execute a search warrant. Now the execution of a search warrant takes place by going to a Superior Court Judge, having that person review information and then establishing that there is, in fact probable cause, reason to believe that there is something going on at that particular location. In this particular case Judge Feinberg signed a search warrant to search the location, the premises of 144 Elizabeth Avenue based on the information that the police gave them.
These statements clearly intended to lead the jury to conclude that because the police deemed an informant reliable (the informant did not testify at trial) and because they had been successful in obtaining a search warrant, defendant must be guilty. Such matters were immaterial to the task before the jury and the prosecutor should not have commented in this manner. This series of improper remarks, some objected to and some not, tainted the jury from the beginning.
During summation, the prosecutor returned to his theme that the jurors, through their participation in this matter, could alleviate in some manner the narcotics problem threatening our society. He told the jury:
When we started this case ... I said to you you're going to be able to make a difference in your community. This is one situation where you can finally do something and say yes, drugs exist. I hate them ... But this time I can do something. I can make a difference. To overlook the facts in this case and disregard the testimony of Detective Sumter and Detective Mejias would be a crime in addition to the crimes that occurred in this incident. They testified truthfully, forthrightly and had no axe to grind, nothing to gain by lying.
Not only was it improper to argue that convicting defendant would "make a difference" in their communities, it has also been held improper to contend police had no motive to lie. See, State v. West, 145 N.J. Super. 226, 234, 367 A.2d 453 (App.Div. 1976), certif. denied 73 N.J. 67, 372 A.2d 332 (1977); cf. State v. Rivera, 253 *91 N.J. Super. 598, 602 A.2d 775 (App.Div.), certif. denied 130 N.J. 12, 611 A.2d 650 (1992). The prosecutor, moreover, had absolutely no basis to imply to this jury that acquitting defendant would be a crime. State v. Pennington, 119 N.J. 547, 575 A.2d 816 (1990).
Not content with inviting the jury to save their communities, the prosecutor told them:
Defense counsel read to you the indictment. I'm not going to reread that. But I'd like to point out one important factor for you to think about. This defendant dealing with cocaine in this case and dealing with weapons. As defense counsel pointed out, there was a situation where defendant has prior convictions. Yes, they are for credibility. But ironically they are also for cocaine and weapons. Here we are again with this defendant. I ask you to think about that.
Before this trial commenced, there was an application to exclude evidence of defendant's prior convictions. The judge to whom the application was presented concluded that if defendant chose to testify, his convictions would be admissible under the then-governing State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978); (State v. Brunson, 132 N.J. 377, 625 A.2d 1085 (1993) was decided after the trial of this matter). Those two convictions, one in 1979 and one in 1984, were admissible, however, solely on the issue of defendant's credibility. State v. Burgos, 262 N.J. Super. 1, 619 A.2d 1013 (App.Div. 1992). The prosecutor's reference to the specific nature of defendant's prior convictions was an attempt to convince the jury defendant was guilty of this crime because he committed similar crimes in the past. That is clearly improper. While defense counsel did not object to the comments (nor indeed to any of the preceding remarks we have noted) and the trial court did tell the jury in its instructions (given the following day) that they could only consider defendant's prior convictions on the issue of his credibility, we are deeply troubled by such an obviously improper argument.
Those entrusted with the responsibility of representing the State at criminal prosecutions must never forget their fundamental obligation is not to convict but to see that justice is done. State v. Marshall, 123 N.J. 1, 586 A.2d 85 (1991); State v. Farrell, 61 N.J. 99, 293 A.2d 176 (1972). If fairness and justice are *92 forgotten in the pursuit of a guilty verdict, the integrity and authority of our criminal justice system is challenged.
We have consistently recognized trials do not occur in a vacuum and a courtroom is not a classroom. Chief Justice Wilentz has noted "... rhetorical excesses ... invariably attend litigation." State v. Williams, 113 N.J. 393, 456, 550 A.2d 1172 (1988). Thus, prosecutors are afforded considerable leeway in their remarks to the jury. State v. Purnell, 126 N.J. 518, 540, 601 A.2d 175 (1992). This recognition, however, cannot obscure the fact that
`... because the prosecutor represents the government and people of the State, it is reasonable to say that jurors have confidence that he will fairly fulfill his duty to see that justice is done whether by conviction of the guilty or acquittal of the innocent.' State v. Farrell, 61 N.J. 99, 105 [293 A.2d 176] (1972). His comments during opening and closing carry the full authority of the State. State v. Johnson, 31 N.J. 489, 511 [158 A.2d 11] (1960). Hence, we cannot sit idly by and condone prosecutorial excesses.
[State v. Spano, 64 N.J. 566, 568, 319 A.2d 217 (1974).]
We are convinced these repeated improper comments, which ran as a thread through this trial, from opening to summation, rise to the level of plain error, for they have "a clear capacity to bring about an unjust result and ... substantially prejudiced the defendant's right to have the jury fairly evaluate the merits of his defense." State v. Thornton, supra, 38 N.J. at 396, 185 A.2d 9.
Because we are satisfied it was impossible for defendant to receive a fair trial in the face of these repeated, highly prejudicial remarks, defendant's convictions must be reversed. We do not find it necessary to address defendant's other contentions. We note, however, the trial court permitted testimony concerning other alleged sales of cocaine at 144 Elizabeth Avenue without balancing its probative value against the prejudice to defendant and without giving the jury any limiting instruction at all on the use of that testimony. State v. Cofield, 127 N.J. 328, 605 A.2d 230 (1992).
Reversed and remanded.