287 N.J. Super. 247 (1996)
670 A.2d 1100
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KYLE JOHNSON, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WADE JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 1995.
Decided February 7, 1996.
*253 Before Judges A.M. STEIN, KESTIN and CUFF.
Susan L. Reisner, Public Defender, attorney for appellants (Olivia Belfatto Crisp, Designated Counsel for Kyle Johnson, of counsel and on the brief; Lorraine E. Stanley, Assistant Deputy Public Defender, for Wade Johnson, of counsel and on the brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondent State of New Jersey (Michael J. Williams, Deputy Attorney General, of counsel and on the brief).
Appellant Wade Johnson filed a pro se supplemental brief.
The opinion of the court was delivered by CUFF, J.A.D.
This case involves the murder of the alleged thief of a young man's marijuana stash. In retaliation, the owner of the drugs with two companions kicked in the thief's door, knocked him to the ground and shot him. He died the next day. These appeals, calendared separately, are consolidated for the purposes of this opinion.
Defendant Wade Johnson was convicted of conspiracy to commit murder in violation of N.J.S.A. 2C:5-2 and 2C:11-3a; knowing or purposeful murder in violation of N.J.S.A. 2C:11-3a; unlawful possession of a handgun in violation of N.J.S.A. 2C:39-5b; and possession of a handgun for an unlawful purpose in violation of N.J.S.A. 2C:39-4a. At sentencing, the conspiracy and possession of a handgun for an unlawful purpose charges were merged with *254 the murder conviction on which Wade Johnson was sentenced to life imprisonment with a thirty-year period of parole ineligibility. A concurrent term of five years was imposed for unlawful possession of a handgun. A $1,500 fine and a $285 VCCB penalty were also imposed.
Defendant Kyle Johnson was convicted of conspiracy to commit murder in violation of N.J.S.A. 2C:5-2 and 2C:11-3a(1)(2); aggravated manslaughter in violation of N.J.S.A. 2C:11-4; unlawful possession of a handgun in violation of N.J.S.A. 2C:39-5b; and possession of a handgun for an unlawful purpose in violation of N.J.S.A. 2C:39-4a. Once again, the conspiracy and possession of a handgun for an unlawful purpose merged with the aggravated manslaughter conviction on which he was sentenced to a twenty-five-year term of imprisonment with a twelve-year period of parole ineligibility. For unlawful possession of a handgun, Kyle Johnson was sentenced to a concurrent term of four years in prison. A $500 fine and a $185 VCCB penalty were also imposed.
In April 1992, Charles Cozart, the victim, resided at 11 Ampere Plaza in East Orange. On April 21, 1992, a juvenile, T.A.M., known as Ears and Big Ears in the neighborhood, discovered that his stash of marijuana was missing. He was told by neighborhood children that his stash had been stolen by Cozart, also known as Salaam. T.A.M. encountered D.S. and related that his stash had been taken by Cozart. D.S. then entered 11 Ampere Plaza, a four-story apartment building. T.A.M. followed and asked D.S. where Salaam lived. D.S. told him and T.A.M. left.
Outside the building, T.A.M. met defendant Kyle Johnson. When told by T.A.M. what Cozart had done, Kyle said Cozart "can't be doing that." Apparently sensing that this might be an opportune time to collect money owed to him by Cozart, Kyle Johnson expressed an intention to accompany T.A.M. when he confronted Cozart. Nevertheless, according to D.S., T.A.M. reentered the building and proceeded to the door of Cozart's apartment. Soon thereafter, T.A.M. was joined by Kyle Johnson, his *255 brother Wade Johnson, and Rodney or Rockman "Rock" King.[1] According to D.S., Kyle Johnson kicked open the door, and he saw defendant Wade Johnson carrying a gun. T.A.M. punched Cozart, who fell to the ground. Defendant Wade Johnson fired at least three shots at Cozart as he lay on the floor. Before he died, Cozart identified T.A.M. as the person who punched him and knocked him to the ground. He also stated that T.A.M. had not shot him. Gina Bell, a woman visiting Cozart, confirmed that T.A.M. had not shot Cozart.
According to T.A.M., after he punched Cozart several times, he started to walk down the stairs. When he heard the shots, he started to run and ran out the back door bumping into Evelyn Margaret Whiting, a local crossing guard and a resident of the building. She testified that as she entered the building, she heard a woman screaming and then she heard three gunshots. Then she saw three men run down the stairs and out the back door. One of these men was identified by Whiting as T.A.M.
Another bystander, Rhonda Thomas, testified that she heard shots and then saw Wade and Kyle Johnson run out of the back door accompanied by T.A.M. After his arrest, T.A.M. implicated both Kyle and Wade Johnson.
Wade Johnson was further tied to the incident by Herbert Wilcher. He testified that he had been incarcerated at the Essex County jail and in September 1992 was placed in the medical ward with Wade Johnson. The men were not strangers. During their stay in the medical ward, Wilcher testified that Wade Johnson asked him to "take care of a fella" when he was released from prison. He was told to contact Kyle Johnson on his release, and he was told that T.A.M. was the intended victim. Wilcher also testified that Wade Johnson told him that T.A.M. was an eyewitness to a crime that he had committed.
*256 On appeal, defendant Wade Johnson presents the following arguments:
POINT I
IMPROPER USE OF THE GRAND JURY BY THE PROSECUTOR'S OFFICE WARRANTS REVERSAL OF DEFENDANT'S CONVICTION.
A. The Prosecutor's Office Engaged In Improper Tactics In Obtaining Rhonda Thomas's Testimony Before The Grand Jury.
B. The Conduct Of The Prosecutor's Office In Compelling Rhonda Thomas's Grand Jury and Trial Testimony Was So Egregious As To Deny Defendant His Constitutional Right To A Fair Trial.
POINT II
THE COURT ERRED IN PERMITTING THE GRAND JURY TESTIMONY OF RHONDA THOMAS AS A PRIOR INCONSISTENT STATEMENT PURSUANT TO EVIDENCE RULE 63(1)(a)(I).
POINT III
PROSECUTORIAL MISCONDUCT DEPRIVED THE DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL. (U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PAR. 10).
POINT IV
THE TRIAL COURT'S INSTRUCTION TO THE JURY ON POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE WAS INADEQUATE AND MISLEADING IN ITS FAILURE TO CHARGE A SPECIFIC UNLAWFUL PURPOSE. (Not Raised Below).
POINT V
THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO GIVE A LIMITING INSTRUCTION ON THE PROPER USE OF EVIDENCE ADMITTED TO SHOW CONSCIOUSNESS OF GUILT. (Not Raised Below).
In a pro se supplemental brief, defendant Wade Johnson raises the following point:
POINT I
THE ADMISSIONS OF THE WRITINGS WITHOUT BEING AUTHENTICATED DENIED DEFENDANT THE RIGHT TO A FAIR TRIAL.
Defendant Kyle Johnson raises the following points:
POINT I
IMPROPER USE OF THE GRAND JURY BY THE PROSECUTOR'S OFFICE WARRANTS REVERSAL OF DEFENDANTS CONVICTION.
A. The Court Erred In Permitting The Grand Jury Testimony Of Rhonda Thomas As A Prior Inconsistent Statement Pursuant To Evidence Rule 63(1)(a)(i).
B. The Prosecutor's Office Engaged In Improper Tactics In Obtaining Rhonda Thomas's Testimony Before The Grand Jury.

*257 C. The Conduct Of The Prosecutor's Office In Compelling Rhonda Thomas's Testimony Was So Egregious As To Deny Defendant His Constitutional Right To A Fair Trial.
POINT II
THE COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A MISTRIAL BASED UPON THE PROSECUTOR'S SUMMATION.
POINT III
THE COURT ERRED IN REFUSING TO GRANT DEFENDANTS MOTION FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL.
POINT IV
THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE: THE COURT ERRED IN SENTENCING DEFENDANT TO A PERIOD OF IMPRISONMENT HIGHER THAN THE PRESUMPTIVE TERM FOR AGGRAVATED MANSLAUGHTER.

I
One of the State's witnesses was Rhonda Thomas. In her direct testimony, she related that she was seated in the circle behind the victim's apartment building and she heard gunshots as she was talking to friends. In response to a question from the prosecutor, she responded that she saw no one run from the building. This testimony contradicted her grand jury testimony, and the State was allowed to introduce this testimony as a prior inconsistent statement pursuant to Evid.R. 63(1)(a)(ii).[2] On appeal, defendants argue that the testimony obtained from Thomas by the grand jury constituted an abuse of the grand jury. They also argue that the conduct of the prosecutor's office in obtaining the Thomas grand jury testimony constituted prosecutorial misconduct. Finally, they argue that the trial judge erred in admitting this testimony as a prior inconsistent statement.
Defendants were indicted by an Essex County Grand Jury on September 1, 1992. While preparing the case for trial, an investigator in the Essex County Prosecutor's Office, Frank LaFera, interviewed Thomas on February 8, 1993. She told him that she *258 had seen the Johnson brothers and "Big Ears" flee from the rear of the victim's building soon after she had heard five gunshots. She also told him that she would not give a sworn statement because she feared retaliation by the defendants.
Thomas was then served with two subpoenas to appear before a grand jury. When she declined to appear, the prosecutor charged her with fourth degree contempt and eventually a bench warrant for her arrest was issued. On March 21, 1993, she was picked up on this bench warrant and brought before a grand jury panel other than the panel which had indicted the Johnson brothers in September 1992. Before this panel, she testified that she saw the Johnson brothers flee from the rear of the victim's apartment building soon after she heard the gunshots.
Defendants assert that the prosecutor knew that this testimony was valuable and that Thomas was a reluctant witness. Therefore, they had her arrested and convened a grand jury solely to preserve this testimony.
For purposes of presenting evidence to a grand jury, the grand jury's power to subpoena witnesses is essential. Matter of Grand Jury Subpoenas, 241 N.J. Super. 18, 25, 574 A.2d 449 (App.Div. 1989). The prosecutor's function with respect to the grand jury is to direct the investigation and propose the witnesses to be subpoenaed by the grand jury. State v. Hilltop Private Nursing Home, Inc., 177 N.J. Super. 377, 395, 426 A.2d 1041 (App.Div. 1981). A prosecutor does not possess any pretrial subpoena power independent of a grand jury. Matter of Nackson, 221 N.J. Super. 187, 205, 534 A.2d 65 (App.Div. 1987), aff'd, 114 N.J. 527, 555 A.2d 1101 (1989). Based on these principles, there is no question that the prosecutor had the authority to suggest that the grand jury subpoena Rhonda Thomas. Rather, the issue is whether the prosecutor utilized the second grand jury panel to conduct pretrial preparation to preserve the testimony of a recalcitrant witness.
*259 This court has commented that, when the grand jury conducts its investigation, "`society's interest is best served by a thorough and extensive investigation.'" Matter of Grand Jury Subpoenas, supra, 241 N.J. Super. at 26, 574 A.2d 449 (quoting Wood v. Georgia, 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569, 581-82 (1962)). Defendants do not argue, nor could they, that a prosecutor must cease all investigatory efforts once an indictment is issued. Similarly, defendants do not argue, nor could they, that a grand jury cannot continue an investigation once an indictment has issued, if the purpose of the investigation is to identify further crimes committed by the indictees or to identify unnamed actors. Defendants contend that Thomas' testimony was not obtained in the course of an investigation of further charges against defendants or others. Rather, they contend that her testimony was obtained solely to prepare for the trial of the pending indictment.
This precise issue has not been previously addressed in this State. But see In re Petition to Compel Testimony of Tuso, 73 N.J. 575, 589, 376 A.2d 895 (1977) (Pashman, J., dissenting). However, this issue has been presented in other jurisdictions and in several federal districts. Generally, it is considered appropriate for the government to interrogate witnesses on subjects relevant to a continuing grand jury investigation, even when the evidence received may also relate to a pending indictment. United States v. Braasch, 505 F.2d 139, 147 (7th Cir.1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975); Beverly v. United States, 468 F.2d 732, 742-43 (5th Cir.1972); In re Russo, 448 F.2d 369, 374 (9th Cir.1971); In re Pilliteri, 420 F. Supp. 913, 915 (W.D.Pa. 1976).
Use of the grand jury, however, to compile evidence solely to pursue a civil remedy is improper. United States v. Procter & Gamble Co., 187 F. Supp. 55, 63-64 (D.N.J. 1960). Similarly, use of the grand jury solely to prepare and preserve the testimony of a witness for the trial of a pending indictment is an abuse of the grand jury. In re Grand Jury Proceedings, 632 F.2d 1033, 1041 (3d Cir.1980); United States v. Woods, 544 F.2d 242, 249 (6th *260 Cir.1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977); Beverly, supra, 468 F.2d at 743; United States v. Dardi, 330 F.2d 316, 336 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964); In re Pilliteri, supra, 420 F. Supp. at 914; United States v. Pack, 150 F. Supp. 262, 264 (D.Del. 1957); see also Howard v. Commonwealth, 395 S.W.2d 355, 359 (Ky. Ct. App. 1965), cert. granted, 383 U.S. 924, 86 S.Ct. 932, 15 L.Ed.2d 844, and cert. dismissed, 384 U.S. 995, 86 S.Ct. 1905, 16 L.Ed.2d 1012 (1966); Erman v. State, 49 Md. App. 605, 434 A.2d 1030, 1044 (1981), cert. denied, 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982); Commonwealth v. Cote, 407 Mass. 827, 556 N.E.2d 45, 48-49 (1990); Matter of Grand Jury Subpoena, 144 Misc.2d 1012, 545 N.Y.S.2d 974, 983, aff'd as modified, 156 A.D.2d 294, 548 N.Y.S.2d 679 (1989); Ex Parte Rogers, 640 S.W.2d 921, 923 (Tex. Crim. App. 1982).
Prior to Thomas' testimony before the grand jury, Investigator LaFera testified that Thomas had told him that she was reluctant to testify because she feared retaliation from defendants. Thomas then testified that after hearing the shots she saw the Johnson brothers run from the building. On its face, the transcript suggests that the prosecutor was presenting witnesses to the grand jury as part of an investigation regarding additional charges against defendants, such as a violation of N.J.S.A. 2C:28-5 (tampering with a witness or retaliation against a witness). This suggestion, however, is belied by the prosecutor's comments in response to a direct question from the trial judge to explain the purpose of the Thomas testimony. She stated:
It's further investigation, Judge, as to  it's in order to have them for a factfinding trial such as this, ....
* * * * * * * *
[The Grand Jury] was utilized for investigative purposes for bringing to light things that might otherwise escape being heard, ....
In this case, the young lady spoke what she had observed, she felt comfortable, there were no investigators present in that room, and I believe it was an atmosphere where she felt that she was not threatened by anybody, and even though she had fear and it was a bit of reluctance, she had some fear, she has *261 stressed throughout and as she stressed and so nicely framed for the Court yesterday, she's in fear for her life, she dares not come right out with what she must come right out to say, I guess, and express it before these defendants. These are the very people that she's in fear of, and I guess that the retribution in the neighborhood for her testimony is there awaiting her on command.
The inescapable conclusion from this statement is that Thomas was brought before the grand jury solely to preserve her testimony for trial. The second grand jury panel was not conducting a further investigation concerning the Cozart murder or any actions by defendants after the shooting. The use to which the prosecutor put this second grand jury was improper; however, it does not require a reversal of the conviction.
We are not satisfied that the State obtained an undue advantage in the presentation of its case through the prosecutor's action. See State v. Murphy, 110 N.J. 20, 35-36, 538 A.2d 1235 (1988). Thomas was not the only witness to testify that the Johnson brothers were seen running from the building shortly after the shooting. Furthermore, her testimony at trial, supplemented by her grand jury testimony, simply suggested that she was a reluctant witness, not an intimidated witness. Simply stated, we do not view the use of the Thomas grand jury testimony as capable of denying defendants a fair trial. State v. DiFrisco, 137 N.J. 434, 474, 645 A.2d 734 (1994), petition for cert. filed, ___ U.S. ___, 116 S.Ct. 949, 133 L.Ed.2d 873 (1995); State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987), cert. denied, 508 U.S. 947, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993).
Finally, in this regard defendants argue that the trial judge erred by admitting the Thomas grand jury testimony as a prior inconsistent statement. The trial judge applied the factors outlined in State v. Gross, 121 N.J. 1, 577 A.2d 806 (1990), and found that the grand jury testimony had sufficient indicia of reliability to allow its use. We are satisfied that the trial judge's ruling on this issue should not be disturbed. We cannot accept as a general proposition that a witness's statement or sworn testimony is inherently unreliable because the witness's attendance has been procured by a subpoena. Accordingly, we decline to reverse these *262 convictions due to the use of the grand jury testimony and the manner by which it was obtained.

II
Defendant Wade Johnson insists that the trial judge committed plain error when he failed to give a limiting instruction on the proper use of the Wilcher testimony. The State introduced Wilcher's testimony of Wade Johnson's request that Wilcher kill T.A.M. as proof of Wade Johnson's consciousness of his guilt of Cozart's death. Wade Johnson argues, however, that this testimony constitutes other crime evidence, see N.J.R.E. 404(b), and required a limiting instruction.
Evidence of conduct including other criminal acts of an accused, subsequent to the offense charged is admissible if it is probative of guilt. State v. Mann, 132 N.J. 410, 418, 625 A.2d 1102 (1993). At trial, the focus is not an "other crimes" analysis. Rather, the trial judge must be satisfied that the chain of inferences from a request to have a witness killed to consciousness of guilt of Cozart's murder is firmly supported. Id. at 422-23, 625 A.2d 1102. Once admitted, the trial judge must charge the jury on its proper use. Id. at 424, 625 A.2d 1102.
Neither at the time this testimony was admitted nor in the charge was the jury instructed on the proper use of this testimony. However, defense counsel failed to object to the omission of a limiting instruction, and on this record we are not prepared to view this error as plain. Defense counsel could reasonably have decided to overlook this omission, since Wilcher had been subject to an effective cross-examination and the instruction limiting the jury's consideration of this testimony to Wade Johnson's consciousness of guilt could have unduly emphasized a portion of Wilcher's testimony directly implicating Wade Johnson in Cozart's death.

*263 III
Defendant Wade Johnson argues that the charge to the jury on possession of a weapon for an unlawful purpose was inadequate and misleading because the trial judge failed to refer the jury to a specific unlawful purpose. This issue was not raised at trial, therefore, we must review this alleged error according to the plain error standard. R. 1:7-2; R. 2:10-2; State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
The trial judge's charge to the jury on this weapons offense nearly mirrors the model jury charge which was revised in 1993 to reflect the holding in State v. Jenkins, 234 N.J. Super. 311, 560 A.2d 1240 (App.Div. 1989). In Jenkins, this court held that the jury instruction on a charge of possession of a handgun for an unlawful purpose must include an identification of such unlawful purpose as suggested by the evidence. Furthermore, the jury must be instructed that they cannot convict based on their own notion of the unlawfulness of some other undescribed purpose. Id. at 316, 560 A.2d 1240; see also State v. Petties, 139 N.J. 310, 319-21, 654 A.2d 979 (1995); State v. Goode, 278 N.J. Super. 85, 88, 650 A.2d 393 (App.Div. 1994).
In this case, the trial judge did not identify the unlawful purpose or purposes alleged by the State and suggested by the evidence. Ordinarily, this would be considered plain error. See Petties, supra, 139 N.J. at 321, 654 A.2d 979; Goode, supra, 278 N.J. Super. at 88, 650 A.2d 393. We decline to reverse this conviction, however, because prejudice to defendant Wade Johnson has been substantially, if not fully, mitigated by the merger of this conviction with the murder conviction. Furthermore, we cannot ignore defense counsel's argument at the time of sentencing in support of merger of the two convictions. At that time, counsel argued that the only evidence of unlawful purpose was defendant's intention to use it in a homicide. He argued:
It's my understanding that the only evidence as to the purpose of  the unlawful purpose of the weapon was to be used in a homicide. As far as I know, there was *264 no other purpose presented to the jury. They could not have found that there was a general purpose to use the weapon unlawfully, just on the murder.
Thus, based on the evidence in this case and the absence of any prejudice to Wade Johnson from this flawed charge, we find that the error was harmless.

IV
In his supplemental letter brief, defendant Wade Johnson urges that the admission of several writings without authentication denied him a fair trial. This argument is without merit. R. 2:11-3(e)(2). Although not authenticated by Wade Johnson at trial, Wilcher's testimony provided a species of authentication in that he testified that the writings were given to him directly by Wade Johnson.

V
Wade and Kyle Johnson assert that remarks by the prosecutor in her summation constitute prosecutorial misconduct which deprived them of their due process right to a fair trial. Defendants' motions for a mistrial following the State's summation, as well as their motion for a new trial, were denied.
Essentially, defendants complain of four statements during the prosecutor's summation. First, defendants take issue with the prosecutor's reference to a woman named Shalorne Simon who did not appear as a witness in the case. Second, defendants complain of the prosecutor's statements regarding certain witnesses and whether or not they received "deals" in exchange for their testimony. Third, defendants complain of the prosecutor's statements regarding the veracity of the State's witnesses in comparison to that of the defense witnesses. Finally, defendants cite the prosecutor's discussion of defendant Wade Johnson's purported attempt to hire Wilcher to kill T.A.M. They argue that the effect of these comments, singly and together, was to create an impression that the defendants had intimidated witnesses and persuaded some witnesses to refuse to testify.
*265 A prosecutor is afforded considerable leeway in fashioning a summation. State v. Williams, 113 N.J. 393, 447, 550 A.2d 1172 (1988). The State is entitled to summarize its case "graphically and forcefully," State v. Pratt, 226 N.J. Super. 307, 323, 544 A.2d 392 (App.Div.), certif. denied, 114 N.J. 314, 554 A.2d 864 (1988), but the State must refrain from "inflammatory and highly emotional" appeals which have the capacity to divert the jury from a fair consideration of the evidence of guilt. State v. Marshall, 123 N.J. 1, 161, 586 A.2d 85 (1991). At all times, the prosecutor's comments must be confined to the evidence and reasonable inferences to be drawn from the evidence. State v. Smith, 27 N.J. 433, 460, 142 A.2d 890 (1958). However, a departure from the evidence does not necessarily warrant a reversal. Ibid. Prosecutorial misconduct must be "clear and unmistakable and must substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." Id. at 462, 142 A.2d 890 (quoting State v. Bucanis, 26 N.J. 45, 56, 138 A.2d 739 (1958), cert. denied, 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958)). We will focus on each aspect of the summation which defendants urge constitutes prosecutorial misconduct.
In her summation, the prosecutor referred to Shalorne Simon, who had not testified at trial. Before the prosecutor could say anything in reference to Ms. Simon, the defendants objected, and the court sustained their objection. Additionally, the trial judge instructed the jury to "render [its] decision on testimony of people who testified in this case, and nowhere else." The mere mention of Shalorne Simon's name, without more, was not "inflammatory and highly emotional, possessing the capacity to anger and arouse the jury and thereby divert them from their solemn responsibility to render a verdict based on the evidence." Marshall, supra, 123 N.J. at 161, 586 A.2d 85. The trial judge issued a prompt limiting instruction. State v. Zola, 112 N.J. 384, 426, 548 A.2d 1022 (1988), cert. denied, 489 U.S. 1022, 109 S.Ct. 1146, 103 L.Ed.2d 205 (1989); Ramseur, supra, 106 N.J. at 322-23, 524 A.2d *266 188. We cannot discern any impact this remark may have had on the outcome of this trial.
Defendants argue that the prosecutor engaged in misconduct by inappropriately commenting that certain key witnesses did or did not receive "deals" in exchange for their testimony. Specifically, defendants point to the prosecutor's summation where she pointed out that neither D.S. nor Herbert Wilcher got "deals" in exchange for their testimony. The record regarding D.S. clearly supports the prosecutor's statement that D.S. received nothing in exchange for his testimony. Regarding Herbert Wilcher, the prosecutor was only responding to defense counsel's claims that Wilcher agreed to testify in exchange for a bail agreement. A prosecutor may respond to an issue or argument raised by defense counsel. Her response to an issue injected by opposing counsel cannot be considered a foray beyond the evidence adduced at trial. See State v. Wilson, 128 N.J. 233, 241-42, 607 A.2d 1289 (1992).
Defendants also complain of the reference to the plea agreement made with T.A.M. An examination of the record illustrates that the prosecutor was nothing but forthright in her summation regarding the agreement with T.A.M. She stated,
If not for him, we would have never known anything about this case, so we gave him a deal. We let him plead to aggravated manslaughter, and for that he received three years.
She then went on to state:
When he gave his statement, he had no reason, no reason to believe that, because of his statement, he was going to get a deal. That happened later on when he promised to testify in this case, promised to testify in this case.
In her comments concerning the veracity or credibility of the State's witnesses in comparison to the defense witnesses, the prosecutor said:
Now, let me talk just a little bit about Vada Nobles, the witness for the Defense. Vada Nobles will have you believe he does not know Kyle Johnson that well, he's only an acquaintance, he's not his friend, yet, he came into this courtroom to testify not on behalf of the State, he came to testify on behalf of the Defense.

*267 And what did he say? He says that  he really doesn't say a heck of a lot, but he did tell you that his friend, Kyle Johnson, was not wearing a red hoody, he was wearing a red T-shirt. Well, would somebody  think about that, ladies and gentlemen, would somebody come in here to testify if they don't really know that person? Was he lying when he said that he really didn't know Kyle Johnson? Was he lying the way he lied to you when he said that he had a conviction for possession of CDS, when the conviction that he has was for distribution of CDS?
What kind of a person would want you to believe that Kyle Johnson is not even his friend, he's just an acquaintance? And maybe he saw more than what he's saying, but you've got to take it from where it comes. He's not about to come in here and give you any information. He's a witness for Kyle Johnson.
Timely objections were made and overruled; the trial judge held that the remarks were fair comment. We agree.
A prosecutor may not vouch for the credibility of a witness. Marshall, supra, 123 N.J. at 156, 586 A.2d 85. In the course of the argument to persuade the jury that the witness is not worthy of belief, a prosecutor may point out discrepancies in a witness's testimony or a witness's interests in presenting a particular version of events. State v. Purnell, 126 N.J. 518, 538, 601 A.2d 175 (1992). The prosecutor's remarks in this instance are no more than a strong argument that Noble's testimony lacked credibility.
Finally, defendants complain of the prosecutor's reference in her summation to Herbert Wilcher's prior convictions. Defendants maintain that the State sought to show that Wilcher was not the type of man who would kill based upon his prior criminal history. The prosecutor stated:
Now, as I indicated to you, he said to you  and I believe it was brought out by Mr. Herman  that he thought that the defendant had a lot of nerve, that he [Herbert Wilcher] was not a killer, and he might be a lot of things, but he wanted you to know, ladies and gentlemen, that he was not a killer, and wanted you to know he had no intentions whatsoever of following through and killing another human being.
We do not interpret these comments in the manner urged by defendants. The prosecutor did not even specifically address Wilcher's prior convictions in the context of the statement. The comment was based directly on Wilcher's testimony and cannot be considered inflammatory. Marshall, supra, 123 N.J. at 161, 586 A.2d 85.
*268 In sum, none of the instances cited by defendants constituted prosecutorial misconduct, and therefore, the trial judge properly denied defendants' motions for mistrial and motions for a new trial.

VI
Defendant Kyle Johnson argues that the trial judge should have granted his motion for a judgment of acquittal pursuant to R. 3:18-1 and his motion for a new trial pursuant to R. 3:20-1. He contends that the State did not satisfy all the statutory elements of the crimes of conspiracy, murder, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. This argument is without merit, R. 2:11-3(e)(2), and no further comment is necessary, except in relation to Kyle Johnson's argument concerning his conviction of unlawful possession of a weapon. We comment because defendant's argument totally ignores the inference allowed by N.J.S.A. 2C:39-2b.
A motion for a judgment of acquittal must be granted when a reasonable jury cannot find guilt beyond a reasonable doubt viewing the State's evidence in its entirety, including all favorable inferences which reasonably can be drawn from the evidence. State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967). This court uses the same standard in its review of a denial of this motion. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964); State v. Tarver, 272 N.J. Super. 414, 425, 640 A.2d 314 (App.Div. 1994).
A motion for a new trial may be granted as against the weight of the evidence, if it clearly and convincingly appears that there has been a manifest denial of justice, giving due regard to the opportunity of the jury to pass upon the credibility of the witnesses. R. 3:20-1; State v. Onysko, 226 N.J. Super. 599, 604, 545 A.2d 226 (App.Div. 1988).
N.J.S.A. 2C:39-5b provides:

*269 Any person who knowingly has in his possession any handgun, ... without first having obtained a permit to carry the same as provided in section 2C:58-4, is guilty of a crime of the third degree.
The essential elements of this offense are knowing possession of a handgun capable of being fired without first having obtained a permit. State v. Ingram, 98 N.J. 489, 500, 488 A.2d 545 (1985). Although there was ample testimony in this record that Wade Johnson carried a handgun and that the circumstances and the purpose of his possession was known to Kyle Johnson, the State produced no testimony concerning the existence of a permit to carry the gun.
N.J.S.A. 2C:39-2b, however, allows a jury to infer that the permit does not exist, until the defendant comes forward with evidence to the contrary. Ingram, supra, 98 N.J. at 497-98, 488 A.2d 545. In this case, neither Kyle nor Wade Johnson came forward with any evidence that a permit had been issued for the handgun carried by Wade. Furthermore, the trial judge provided the appropriate instruction concerning the permissible inference which the jury could make under the facts of this case. Therefore, we are satisfied that the trial judge properly denied the motion for a judgment of acquittal and the motion for a new trial.

VII
Defendant Kyle Johnson argues his twenty-five year term of imprisonment with a twelve-year period of parole ineligibility for aggravated manslaughter is excessive. He contends that the sentencing judge improperly cited and weighed the aggravating and mitigating factors in imposing a term beyond the presumptive twenty-year term. N.J.S.A. 2C:44-1f(1)(a).
The sentencing judge identified three aggravating factors: the nature of the offense, the need for deterrence, and the extent of defendant's prior criminal history. He also found one mitigating factor: the influence of his older brother. These findings are well-supported by substantial evidence and should not be disturbed. State v. Roth, 95 N.J. 334, 363-65, 471 A.2d 370 (1984). *270 The present offense did not involve Kyle Johnson's first brush with the criminal justice system. The record reveals a young man with a history of involvement in drug, weapons and assault charges since the age of sixteen. Furthermore, Kyle Johnson was not a passive participant in the death of Charles Cozart. Upon learning that Cozart had stolen T.A.M.'s stash, Kyle asserted that Cozart's actions should not be tolerated and Kyle kicked open Cozart's door. We conclude that the sentencing judge appropriately balanced the aggravating and mitigating factors, and the sentence imposed should not be disturbed. State v. Jabbour, 118 N.J. 1, 6, 570 A.2d 391 (1990); State v. O'Donnell, 117 N.J. 210, 215, 564 A.2d 1202 (1989).
Affirmed.
NOTES
[1] King was tried with the Johnson brothers but acquitted on all charges.
[2] See N.J.R.E. 803(a)(1)(B).