230 N.J. Super. 95 (1988)
552 A.2d 1015
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RONALD TAPLIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 9, 1988.
Decided December 7, 1988.
*96 Before Judges PRESSLER and SCALERA.
Alfred A. Slocum, Public Defender, attorney for appellant (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (John J. Scaliti, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following a jury trial defendant Ronald Taplin was convicted of theft in the fourth degree based on the allegation that he had assisted a friend, Eric Johnston, in stealing a television set from Johnston's mother by removing it during her absence from the house in which both Johnston and his mother lived. He was sentenced to an 18-month prison term.
On appeal defendant raises the following issues:
1. The introduction into evidence of the defendant's mug shot photographs as well as testimony relating to the mug shot photograph number in possession of the Camden sheriff and reference to the defendant having been incarcerated portrayed the defendant to the jury as a convicted criminal and effectively denied him a fair trial under the Sixth Amendment to the United States Constitution.
2. The trial court committed plain error in failing to charge the "claim of right" affirmative defense as set forth in N.J.S.A. 2C:20-2(c) (not raised below).
3. It was reversible error for the trial court to have refused to instruct the jury that they could return a verdict of guilty of theft with a value of the property being found to have been worth less than $200.00.
We consider the first of these issues in the context of the defendant's defense to the charge. Defendant, because of his prior criminal record, had elected not to testify. His defense, however, was not that he had not participated with Johnston in the removal of the television set but rather that he did not *97 realize that Johnston, who lived in the house, did not have the right to take and sell it. In accordance with this defensive strategy, defense counsel, in his opening statement to the jury, admitted that defendant had helped Johnston to take the television set but believed Johnston had a right to do so.
During the course of in limine motions heard immediately after the jury was empaneled and sworn, defendant made clear his objection to the prosecutor's intended use at trial of the photographic array from which the eye witness, Nellie Smith, had made an out-of-court identification, moving for the exclusion of those photographs from evidence. Smith, a close neighbor of Johnston's mother, had watched Johnston and defendant remove the television set from the house. She, of course, knew Johnston and recognized defendant as well, having seen him in the neighborhood and in other parts of Camden from time to time during the preceding three years. Defendant's identification as the person who assisted Johnston was consequently never in issue. Smith, who testified for the State, was prepared to make a positive in-court identification. Johnston himself testified for the State, explaining how he and defendant committed the theft.[1] And defense counsel, during argument on the in limine motion, assured the judge that he had no intention of contesting Smith's in-court identification.
Defense counsel, in arguing for the exclusion of the photographs, acknowledged that Smith had been taken to the police station after Johnston's mother returned home to discover the theft, that she had there been shown a photographic array of eight persons, including a front and profile view of each, and that she had had no trouble picking defendant's pictures as the person she had not only seen but had also previously known by *98 sight. Counsel's point was that the pictures constituting the photographic array were unmistakably "mug shots" and would be so understood by the jury even if identifying information was to be covered up when the jury saw the pictures. He therefore agreed to stipulate that defendant had participated in the removal of the television set, asserting that Smith's positive in-court identification would need no further corroboration not only because of her prior familiarity with defendant but also because defendant would not challenge it. Thus, he argued, the photographic array would not lend any perceptible strength to the State's case and the only effect of the admission of the array would be to prejudice defendant by letting the jury know that he had a prior criminal record even though he was not going to testify in his own behalf. Although the trial judge rejected defendant's application, we agree with defendant that the photographic array, which we have reviewed, should not have been admitted and, hence, that the denial of his motion to exclude them constituted error.
The issue before us is not admissibility per se. The question rather is whether the trial judge properly exercised his discretion under the Evidence Rule 4 standard which authorizes the exclusion of admissible evidence whose probative value is substantially outweighed by its prejudice to the objecting party. We are satisfied that that standard required exclusion here.
Our courts have always recognized the inordinate capacity for prejudice to a defendant which inheres in the jury's knowledge that he has already been convicted of a criminal charge. See, e.g., State v. Manley, 54 N.J. 259, 270 (1969); State v. Onysko, 226 N.J. Super. 599, 603 (App.Div. 1988); State v. Williams, 167 N.J. Super. 57, 63 (App.Div. 1979). Indeed, a previously convicted defendant's decision not to testify on his own behalf is typically motivated, if not entirely then at least in substantial measure, by his desire to keep his prior record out of evidence even though its admission is only allowable to impeach his credibility and not as bearing on his guilt of the *99 crime for which he is standing trial. See generally State v. Sands, 76 N.J. 127 (1978). Defendant here obviously chose not to testify for that reason, either alone or among others. Just as obviously, by making that choice, he accepted the risks implicit in foregoing the opportunity to tell an exculpatory story. It was his right to do so and thereby to foreclose the State's right to admit his prior record for impeachment purposes.
Clearly, when a defendant does not testify, the State cannot, in the ordinary circumstance, refer to his criminal record. If proof is nevertheless adduced which permits the jury to infer that he has a criminal record, defendant cannot but be prejudiced and, in effect, be deprived of the benefit he anticipated in deciding not to testify. There may, of course, be situations in which such proof may be admissible because it bears on some other issue relevant to the State's meeting of its burden of proving guilt beyond a reasonable doubt. Evid.R. 55. And where identification is an issue and the State's use of a mug shot is reasonably related to that issue, we have held that the mug shot is admissible for that purpose, in as neutral a form as possible and despite the inferences it nevertheless raises. See State v. O'Leary, 25 N.J. 104, 115 (1957). And compare State v. Onysko, supra, 226 N.J. Super. at 603. Here, however, identification was not an issue. The photograph of defendant objected to was and could reasonably be inferred by a jury to be a mug shot suggestive of a prior criminal record, and we perceive no purpose for its admission other than unfairly to permit the jury to draw the inference that defendant had a prior criminal record. Compare, generally, United States v. Harrington, 490 F.2d 487 (2d Cir.1973); United States v. Torres-Flores, 827 F.2d 1031 (5th Cir.1987). And see Arca v. State, 71 Md. App. 102, 523 A.2d 1064 (Ct.Spec.App. 1987); Mancebo v. State, 350 So.2d 1098 (Fla. Dist. Ct. App. 1977). In sum, probative value to the State of the photographic array was so minimal and its potential for prejudice to defendant so substantial that it should, on defendant's motion, have been excluded, *100 and the denial of that motion, in our view, was an error of sufficient magnitude to require reversal of the conviction.
Having concluded that admission of the photographic array constituted reversible error, we need not address defendant's remaining claims except to note that on retrial we assume that Johnston's mother, should she again be a State's witness, will be appropriately cautioned not to testify that she had seen defendant in a custodial situation and that the trial judge will be requested to charge the claim of right defense recognized by N.J.S.A. 2C:20-2(c). Finally, we are satisfied, based on the evidence, that the trial judge did not err in refusing to charge the jury on the lesser included disorderly persons offenses of theft under N.J.S.A. 2C:20-2(b)(3).
The judgment of conviction is reversed, and the matter is remanded for retrial.
NOTES
[1] Johnston's testimony, however, exculpated defendant. When asked on direct examination whether defendant knew "that you did not have permission to take the television," Johnston responded that "Well, he had no way of knowing because he didn't ask me, but, you know, I knew I didn't. But he didn't know I didn't."