281 N.J. Super. 156 (1995)
656 A.2d 1279
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ERVAN CRIBB, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1995.
Decided April 19, 1995.
*157 Before Judges KING, MUIR, Jr., and D'ANNUNZIO.
Alan Dexter Bowman, argued the cause for appellant (Alan Dexter Bowman, P.A., attorney; Mr. Bowman, on the brief).
Susan M. Palsir, Assistant Prosecutor, argued the cause for respondent (Maryann K. Bielamowicz, Mercer County Prosecutor, attorney; Ms. Palsir, of counsel and on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Tried to a jury under Mercer County Indictment No. 91-10-1265, defendant was convicted of first degree robbery and sentenced to twenty years imprisonment with a ten year period of parole ineligibility. Defendant appeals, and we reverse.
In August 1991, the victim, Anna Memmer, worked at a warehouse on Walnut Street in Hamilton Township. Her work day started at 7:30 a.m., but it was her habit to arrive in the neighborhood at approximately 7:00 a.m., buy coffee and a newspaper at a convenience store, and then sit in her car in the warehouse's parking lot drinking coffee, reading the newspaper and waiting for her boss to arrive.
*158 Memmer testified that during the week of August 12, 1991, she noticed a black male lurking in the area. She saw this person each work day during the week of August 12 and described him as being approximately five foot seven inches tall and 210 pounds. She saw him again on August 19, as she sat in her car in the warehouse parking lot. Memmer turned her attention to her newspaper and lost sight of him. Shortly thereafter, however, the same black male tapped on her window, which was slightly cracked open, and asked for money. Memmer told him she had no money. At that time, he put his hand into the window opening and began to rock the car. His efforts caused the door frame to crack and bend. Simultaneously, he drew a folding straight edge razor from his waistband and threatened to slice Memmer. When she started the car and began to sound the horn and scream, the perpetrator fled. Memmer reported the incident to the police who canvassed the neighborhood. The police were unable to find anyone matching the description she had given them.
Ten days to two weeks later, Detective O'Dwyer presented an array of eight photographs to Memmer. She selected defendant's photo from the array and identified him as the perpetrator.
Memmer's testimony was the only evidence connecting defendant to this crime. The State also established that defendant lived in the neighborhood where the crime occurred. Defendant did not testify, but he presented the testimony of Paula Jumper and John Bachofen. Paula Jumper lived with defendant, their daughter, Cheyenne Cribb, and another child, Melvin Jumper. Ms. Jumper remembered August 19, 1991 very well because it was raining and the defendant, who had recently been laid off from his employment, had an interview scheduled at an unemployment office at 8:30 that morning. She testified that they arose at about 7:00 a.m., fed and dressed the children and delivered the children to their babysitter. Ms. Jumper then went to her job in Trenton and the defendant went to his unemployment interview. According to Ms. Jumper, defendant was home attending to these family matters at the time of the robbery.
*159 Bachofen testified that he was the manager of the Trenton unemployment insurance claims office in August 1991. The records of that office indicated that defendant first applied for unemployment benefits on August 5, 1991 and was found eligible at that time. Defendant was scheduled to return on August 19, 1991 for a benefit rights interview scheduled for 8:30 a.m. Unemployment benefit checks are authorized as a result of that interview. Those checks would be mailed the following day. Bachofen's records indicate that defendant appeared for the interview at between 8:30 a.m. and 8:50 a.m. and defendant's check was authorized and mailed the next day.
The jury had to determine whether Memmer's identification of defendant established beyond a reasonable doubt that defendant committed the robbery. Expressed another way, the jury had to determine whether the defense witness, Paula Jumper, was credible enough to create a reasonable doubt regarding defendant's guilt. We are persuaded that two incidents occurred during this trial which had an inappropriate tendency to influence the jury.
After a pre-trial hearing and the trial court's ruling that Memmer's out-of-court photo identification was admissible, defense counsel expressed concern regarding the source of defendant's photograph. During the pre-trial hearing, Detective O'Dwyer had indicated that defendant's parole officer had been present at a weekly detectives meeting when the Memmer robbery was discussed. Based on the description of the perpetrator provided by Memmer, the parole officer suggested defendant as a suspect. Defense counsel asked "that Detective O'Dwyer not mention any talk of parole officer, how he got the picture, just things of that nature; that any reference to the photo array not be made mug shots. I'm concerned `mug shot' might be used." The trial court and the assistant prosecutor agreed to avoid those problems.
Memmer was the State's first witness. During a break in her direct testimony, defense counsel again expressed her concerns regarding information getting to the jury about the source of the photographs and their characterization as mug shots. The court *160 instructed the assistant prosecutor not to use the "mug shot" terminology and not to imply or otherwise establish that defendant's parole officer suggested him as a suspect.
Memmer resumed her direct testimony and, through no fault of the prosecutor, testified that the photographs "they were, like, mug shots. I guess that's what you call them." Defense counsel objected, but the trial court's curative instruction was limited to stating that "there is no way to know that this witness would know what kind of photographs those were, ladies and gentlemen."
Identification of photos of a defendant as mug shots has resulted in reversal of convictions on appeal because they imply a criminal history. See United States v. Torres-Flores, 827 F.2d 1031, 1035-39 (5th Cir.1987); Barnes v. United States, 365 F.2d 509, 512 (D.C. Cir.1966); see also State v. Taplin, 230 N.J. Super. 95, 99-100, 552 A.2d 1015 (App.Div. 1988) (where identification not contested, it was reversible error to admit a photo of defendant which unmistakably was a "mug shot"); cf. State v. Onysko, 226 N.J. Super. 599, 605, 545 A.2d 226 (App.Div. 1988) (information on back of mug shot that defendant used an alias and was a burglar required reversal). On the other hand, reference to identifying photographs as mug shots also has been deemed to be harmless error. See State v. Porambo, 226 N.J. Super. 416, 425-26, 544 A.2d 870 (App.Div. 1988) (although reference to defendant's mug shots suggested defendant's prior involvement in criminal activity, it was not reversible error because references were "fleeting" and trial court gave a curative instruction); State v. Miller, 159 N.J. Super. 552, 561-62, 388 A.2d 993 (App.Div. 1978); cf. State v. O'Leary, 25 N.J. 104, 115-16, 135 A.2d 321 (1957) (police testimony referring to photo of defendant as coming from "our gallery" did not require mistrial). See generally D.H. White, Annotation, Admissibility, and Prejudicial Effect of Admission, of "Mug Shot," "Rogues' Gallery" Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial, 30 A.L.R.3rd 908 (1970 & Supp. 1994).
*161 The testimony of Detective O'Dwyer exacerbated the prejudicial potential of Memmer's reference to the photograph as a mug shot. On his direct testimony, O'Dwyer related the physical description of the perpetrator given to him by Memmer. The following exchange then occurred:
Q. Did you know a person who fit the description that she related to you?
A. No, I did not.
Q. Did you speak to any other officers regarding that description?
A. Yes. On the 21st I discussed with other officers at a Hamilton Township Detective Bureau meeting 3:00 the general description.
Q. Did there [sic] other officers you spoke to know someone who fit that description?
A. Yes.
Q. Who is the person who fit the description?
A. Ervan Cribb.
O'Dwyer then testified that he procured an "identification photo of Ervan Cribb" as well as "seven other photographs of black males, dark complexion and mid to late twenties with short hair." He then created the photo lineup utilizing those eight photographs. It was apparent to the jury from O'Dwyer's testimony that the seven other males whose photos were used in the array were not considered by the police to be suspects.
O'Dwyer's testimony had a tendency to establish that the police believed that Ervan Cribb fit Memmer's description and, therefore, was the perpetrator. It also tended to establish that Ervan Cribb was an individual notorious to the police.
Where identification is an issue, as in this case, mug shots may be admissible. But they must be presented in "as neutral a form as possible." State v. Taplin, supra, 230 N.J. Super. at 99, 552 A.2d 1015. Defendant's photo was not presented in a neutral format. There was no legitimate need to tell the jury that the police considered defendant to be the only suspect in the photo array or to imply defendant's notoriety.[1] In this case, *162 identification was the only issue and the evidence of defendant's guilt was provided by only one eyewitness. Under those circumstances, we are persuaded that O'Dwyer's testimony, coupled with Memmer's reference to the photo as a "mug shot," had a substantial capacity to influence the jury in favor of conviction because it tended to buttress the credibility of Memmer's identification of defendant as the perpetrator and reinforce its impact.
Reversed and remanded for further proceedings.
NOTES
[1] In many cases, it may not be possible to suppress the fact that a particular person is the focus of an investigation. In this case, however, it would have been sufficient for O'Dwyer to testify that he prepared a photo array containing eight photographs, without an explanation as to why Cribb's photo was in the array and without calling particular attention to Cribb.