671 A.2d 165

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DENNIS G. IPPOLITO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 17, 1996—Decided February 16, 1996.

Before Judges DREIER, A.M. STEIN and KESTIN.

*Mark H. Friedman,* Assistant Deputy Public Defender argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Friedman,* of counsel and on the brief).

*Nancy Peremes Barton,* Deputy Attorney General argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Ms. Barton,* of counsel and on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant appeals from convictions of fourth-degree theft of property of $200 or more, *N.J.S.A.* 2C:20–3a, and of the disorderly persons offense of resisting arrest, *N.J.S.A.* 2C:29–2a, a lesser-included offense of the fourth-degree crime originally charged. Defendant was sentenced to a term of eighteen months with a nine-month parole disqualifier for the theft and to a 180–day concurrent sentence in the county jail for resisting arrest.

Defendant and his sister's fiancee, Jack Ensel, were seen loading plywood into Ensel's van at a residential construction site in Warren at 11:00 p.m. One of the partners in the construction company developing the site and a friend of his had noticed the van earlier in the evening and then again saw the van there at 11:00 p.m. Becoming suspicious because all other workers had left the site, they called the police. The owner later discovered that twenty or thirty sheets of plywood were missing.

As the police arrived at the site, they observed the van with its lights off and its door open. When the two individuals outside the van became aware of the presence of the police car, they jumped inside the van and drove away with their headlights off. When the police attempted to stop the vehicle by activating their overhead lights, the driver then turned on the van's lights and sped away. The police car followed with its lights and siren activated. After a four-mile chase through Warren, Watchung, and Greenbrook the van stopped in the opposite lane of traffic. Both occupants exited through the driver's side and began to run away. The officers pursued the suspects and eventually caught defendant, who had been the passenger in the van. The driver could not be found, but was later arrested. There was a question concerning the amount of resistance defendant gave to his arrest.

One officer sprained his knee and elbow and the other officer broke his left index finger and sprained his wrist. Defendant contended that when the van stopped, he stepped out of the van on the driver's side so that he would not walk into the middle of the street, but before he moved two steps, he was tackled and everything became "foggy and blurry." He denied running or struggling.

Ensel, the driver of the van, entered into a plea agreement and testified for the State in return for a non-custodial sentence. He asserted that defendant had "asked me to come and pick him up and take a ride to get some plywood." He picked up defendant in a rented van and followed his directions to the development where they began loading the van with wood. When Ensel saw the police he "panicked and just drove away, with the police car chasing ...." He finally "stopped the van and ran" when he "realized that [he] wasn't going to get away." He hid under a bush and waited until everyone left before walking out of the woods. Before making his plea agreement, he had submitted a false alibi statement to the court, claiming he was at a motel the entire evening with his fiancee.

Defendant gave contrary testimony. He stated that he was employed as a carpenter at the time of the robbery and also did independent carpentry work, but he had never worked in any developments in Warren. On the night of the robbery, Ensel pulled his van up to defendant's home and asked him to take a ride to talk about problems between Ensel and defendant's sister. They drove to a job site where Ensel said his "boss okayed him to take some lumber and move it." The defendant was unsure how Ensel was employed at the time, but he was aware that Ensel had had various jobs as a building laborer and a security guard. Defendant testified that he thought what they were doing was proper because he saw people "walking around and stuff ...." When he became aware that the police were pursuing them, he repeatedly asked Ensel to pull over. When Ensel finally stopped,

the defendant stepped out of the van only to be tackled by the police.

Defendant raises two principal problems concerning the jury charge, as well as a claim of ineffective assistance of counsel:

*POINT I*

THE CONVICTION AND SENTENCE IMPOSED FOR FOURTH DEGREE THEFT MUST BE REVERSED BECAUSE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE JURY WAS NOT INSTRUCTED ON THE AFFIRMATIVE DEFENSE OF CLAIM OF RIGHT SET FORTH IN *N.J.S.A.* 2C:20-2c AND WAS GIVEN AN IMPROPER, CONFUSING AND INCOMPLETE INSTRUCTION ALLOWING IT TO INFER GUILT OF THEFT FROM DEFENDANT'S "UNEXPLAINED" POSSESSION OF STOLEN PROPERTY. (Not Raised Below)

A. *Failure to Charge on Claim of Right.*

B. *Improper Jury Instruction on Inference of Theft from Possession of Recently Stolen Property.*

C. *Ineffective Assistance of Counsel.*

Defendant's initial point is that the judge should have given a "claim of right" charge. He raises it both as an issue of plain error, *R.* 2:10–2, and to indicate the ineffectiveness of his counsel in not requesting this charge which defendant claims was amply supported by the evidence.

The State, however, asserts that a claim of right defense is inapplicable to the facts of this case because it is triggered only where a defendant presents evidence of an honest claim of ownership. According to the State, defendant asserted merely that he thought Ensel had the authority to move the wood. Defendant did not claim ownership of the wood, and therefore, the defense should be inapplicable.

The State's position is not supported by the plain language of the statute, the original commentary to the Code of Criminal Justice, or our reading of the case law. Under *N.J.S.A.* 2C:20-2(c)2:

It is an affirmative defense to prosecution for theft that the actor:

. . . .

(2) Acted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did;

. . . .

There is no indication in the statute that the application of this defense is limited to a claim of ownership.

An ownership requirement is also absent from the language of the commentary of the Criminal Law Revision Commission which recommended the statutory wording. To the contrary, the commentary speaks of the defendant and the owner as potentially separate individuals:

> 4. *Claim of Right: Subsection c.* To be guilty of theft, the actor must be aware that he is appropriating property and that it is the property of another, *i.e.*, there must be a "conscious" misappropriation. *He is not a thief if he mistakenly supposes that the owner has consented. . . .*
>
> [2 *Commentary: Final Report of the New Jersey Criminal Law Revision Commission* 221 (1971) (emphasis added).]

This issue in the present case was raised under similar circumstances in *State v. Taplin,* 230 *N.J.Super.* 95, 552 *A.*2d 1015 (App.Div.1988). There, the defendant had been charged with assisting a friend in stealing a television set from the home where the friend lived with his mother. The defendant admitted helping his friend remove the television, but claimed that he did not realize the friend had no right to take and sell it. *Id.* at 96–97, 552 *A.*2d 1015. On appeal, defendant urged that the court had committed plain error in failing to charge the affirmative defense of claim of right. *Id.* at 96, 552 *A.*2d 1015. We reversed the conviction on other grounds and did not directly rule on the claim of right issue. However, we stated specifically that "we assume . . . that the trial judge will be requested to charge the claim of right defense recognized by *N.J.S.A.* 2C:20–2(c)." *Id.* at 100, 552 *A.*2d 1015.

The State argues that *State v. Mejia,* 141 *N.J.* 475, 662 *A.*2d 308 (1995) and *State v. Harris,* 141 *N.J.* 525, 662 *A.*2d 333 (1995) support its contention that the statute requires a claim of ownership and that defendant's arguments merely related to the elements of theft generally. In *Mejia,* the Court defined the claim of right defense in language that apparently included an ownership requirement:

> To establish the claim-of-right defense, defendant need prove only that he honestly believed that he was recovering *his own* property.
> [*Id.* at 497, 662 A.2d 308 (emphasis added).]

Yet in the same paragraph, the Court also cited with approval *State v. Taplin, supra,* which the Supreme Court characterized as recognizing that defendant was "entitled to [the claim of right] defense because he honestly but incorrectly believed he was assisting [the] rightful owner in removing [the] television set." *Ibid.* The court also observed that the claim of right defense goes beyond merely negating an element of a theft or robbery charge: "By comparison, claim of right is not premised on a failure of proof, but on justification." *Id.* at 496, 662 A.2d 308. From these citations, we glean the Supreme Court's approval of the principle that the claim of right defense encompasses more than claims of ownership.

We next turn to the issue of whether the absence of the claim of right charge was plain error. The general rule is that it is plain error for a court to omit a charge concerning a statutory affirmative defense that has been established by evidence in the case, "regardless of what requests counsel may make." *State v. Moore,* 113 *N.J.* 239, 287–288, 550 *A.*2d 117 (1988) (regarding the statutory defense of diminished capacity); *State v. Underwood,* 286 *N.J.Super.* 129, 138, 668 *A.*2d 447 (App.Div.1995) (concerning the statutory defense to theft that the property was received with a purpose of returning it to the true owner); *State v. Jasuilewicz,* 205 *N.J.Super.* 558, 574–575, 501 *A.*2d 583 (App.Div.1985), *certif. denied,* 103 *N.J.* 467, 511 *A.*2d 649 (1986) (regarding the defense of diminished capacity).

While we have found no case specifically treating the omission of a claim of right defense as plain error, in *State v. Bzura,* 261 *N.J.Super.* 602, 619 *A.*2d 647 (App.Div.), *certif. denied,* 133 *N.J.* 443, 627 *A.*2d 1147 (1993), we held that the defendant was not prejudiced by the absence of a specific jury charge concerning claim of right because the trial court's instructions had specifically addressed the defense's claim of right theory. *Id.* at 616–617, 619 *A.*2d 647. Although the defendant claimed that the statutory

defense should have been specifically charged, we stated that the trial judge in his charge had sufficiently presented the defense for the jury's consideration. We clearly implied that we would have found plain error had the trial court *sua sponte* not explained the substance of the defense to the jury. *Ibid.* Likewise, in *State v. Taplin, supra,* we did not have to reach this issue since we found other bases for reversal. 230 *N.J.Super.* at 99–100, 552 *A.*2d 1015. As noted earlier, we clearly stated that defendant was entitled to the claim of right charge on remand. *Id.* at 100, 552 *A.*2d 1015.

In the case before us, there were ample facts to support defendant's claim based upon his testimony.[1] The circumstances of the claim of right defense should have been apparent to the trial judge through defendant's testimony and his attorney's summation. This is not a situation where the court would have been required " 'on its own meticulously [to] sift through the entire record' to determine whether the issue properly was before the jury." *State v. Jasuilewicz, supra,* 205 *N.J.Super.* at 575, 501 *A.*2d 583 (distinguishing *State v. Choice,* 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985), where the court mistakenly charged the jury on manslaughter with little basis in the record). In the case before us, the jury could have determined factually that one of three scenarios existed: First, defendant had been duped by his future brother-in-law to assist him in a theft; second, Ensel had been duped by defendant to assist defendant in a theft; or third, defendant and Ensel were partners in crime, and each was merely attempting to lay the blame on the other to save himself. The issue turned sharply on the credibility of defendant and Ensel, but the jury was never told that if they believed defendant, his explanation was in fact exculpatory under the statute.

The court did tell the jury that it could consider "a satisfactory explanation" for the defendant's possession of the property. But

---

[1] Of course, if there are insufficient facts raised by the evidence at trial to support the defense, the charge need not be given. *See e.g., State v. Harris, supra,* 141 *N.J.* at 559, 662 *A.*2d 333.

the judge kept cutting short his instruction as to what constituted a satisfactory explanation. At best, this was confusing to the jury, and at worst, this constituted a charge that the claim to right defense was unavailable. The judge stated:

> In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise ... that paragraph should not be in there. Does not apply to this case.
>
> Possession may be satisfactorily explained through other circumstances, other evidence independent of—nope.—Independent of any testimony of the accused.

The jury could have understood these words to mean that it needed independent testimony to determine whether the explanation was satisfactory and could not apply the defense on the basis of defendant's testimony alone. Since defendant offered no proof other than his own testimony, the jury would have had no legal basis to accept defendant's explanation.

For the first time on appeal, defendant also raises the objection that the court improperly charged the jury that it could consider the common law presumption that defendant's possession of stolen merchandise shortly after the theft permitted the inference that defendant was the thief. He argues that the charge was not only improper, but that it aggravated the error created by the absence of the claim of right charge.

■ The inference charge is given when there is a dispute concerning the identity of the person who physically took the property. *State v. Dancyger*, 29 *N.J.* 76, 148 *A.*2d 155, *cert. denied*, 360 *U.S.* 903, 79 *S.Ct.* 1286, 3 *L.Ed.*2d 1255 (1959). The evidence in *Dancyger* established that the defendant possessed stolen jewelry within hours of its taking, but no direct evidence established that defendant actually took the jewelry and he told police that he found it in the gutter. *Id.* at 81–82, 148 *A.*2d 155. In *Dancyger*'s often-quoted words:

> It is well established that the *unexplained* and exclusive possession of stolen property shortly after the theft justifies an inference that the possessor is the thief.

> The basis for such an inference is the improbability that the accused could have acquired the stolen property so soon after the theft unless he was the thief.[2]
>
> [*Id.* at 85, 148 A.2d 155 (citations omitted) (emphasis added).]

The absence of direct evidence showing that defendant not only possessed the property, but was involved in its taking a short time earlier, creates the need for the inference and the charge. *See also State v. Davis,* 50 *N.J.* 16, 26, 231 *A.2d* 793 (1967); *State v. Thomas,* 103 *N.J.Super.* 154, 156–158, 246 *A.2d* 746 (App.Div. 1968); *State v. Griffin,* 84 *N.J.Super.* 508, 522–523, 202 *A.2d* 856 (App.Div.1964).

■ The charge is inappropriate where, as here, defendant admits that he took the property and that he possessed it from the time it was taken until it was recovered, but he has explained his possession as a claim of right. In light of such evidence, defendant's acquisition and possession of the property is no longer improbable or unexplained. His possession of the property from the time of its removal was a certainty and there is no need for the jury to resolve the issue by inference. In circumstances such as these, the use of the inference in the face of a claim of right by defendant has an unduly prejudicial effect.

Additionally, we note that the judge removed from the accomplice liability charge the requirement that it was defendant's conscious objective that the crime of theft be committed. This error also compounded the effect of the omitted claim of right charge. These errors individually and cumulatively require a new trial.

Since we have determined that a new trial is necessary, we need not treat defendant's claim of ineffective assistance of trial coun-

---

2 Although the Court in *Dancyger* speaks of the "unexplained possession" of stolen property, it is clear that a defendant cannot avoid the presumption merely by offering an explanation for his possession of the property after its unlawful taking. In *Dancyger,* the defendant explained his possession as his having found the property and the inference was still properly charged, because if the jury rejected defendant's explanation, his later possession still had to be related back to his having been the person who took the jewelry.

sel. We trust that on the retrial of this case the relevant charges will be requested and given.

■ The errors just noted do not, however, affect defendant's conviction for the disorderly persons offense of resisting arrest. The errors may have affected the legal effect the jury gave to defendant's testimony, but they should not have adversely affected his credibility. It is clear that the jury carefully considered the issue of defendant's arrest since it rejected the State's claim that defendant was guilty of the fourth-degree crime of resisting arrest, but found him guilty solely of the disorderly persons offense. The jury obviously found under *N.J.S.A.* 2C:29–2 that the State had not proved beyond a reasonable doubt that defendant had used or threatened physical force or violence against the officers effecting his arrest. We therefore affirm the disorderly persons conviction.

Defendant's conviction of theft of moveable property is reversed and the matter is remanded to the Law Division for retrial. Defendant's conviction of the disorderly persons offense of resisting arrest is affirmed.