24 A.3d 842 (2011)
421 N.J. Super. 511
STATE of New Jersey, Plaintiff-Respondent,
v.
Phillip JOHNSON a/k/a Lamar Brown, Corey Robertson, Defendant-Appellant.
No. A-5686-08T4.
Superior Court of New Jersey, Appellate Division.
Submitted January 26, 2011.
Decided August 19, 2011.
*843 Yvonne Smith Segars, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).
Robert D. Laurino, Acting Essex County Prosecutor, attorney for respondent (Luanh L. Lloyd, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).
Before Judges FUENTES, ASHRAFI and NUGENT.
The opinion of the court was delivered by
ASHRAFI, J.A.D.
Tried for murder and weapons offenses, a jury found defendant Phillip Johnson guilty only of third-degree possession of a handgun without a permit. He was sentenced to an extended term of seven years' imprisonment. He appeals, alleging trial errors and an excessive sentence. Because of two trial errors that prejudiced defendant's right to a fair trial, we reverse the conviction and remand for a new trial.

I.
The charges arose from the July 2006 shooting death of Michael Newkirk on a street in Newark. In May 2007, an Essex County grand jury returned an indictment charging defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2) (count one); third-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5b (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a (count three).
At the trial in May and June 2008, the prosecution presented the following evidence. At approximately 2:50 a.m. on July 9, 2006, a witness was driving on South 9th Street towards 13th Avenue in Newark when she heard a gunshot. She looked up and down 13th Avenue to determine where the shot came from, and she saw three men running in her direction. One of the men "had a little lead" on the other two men. One of the men behind caught up to and kicked the lead man's leg, causing him to fall down. Someone said "I got you now," while the man on the ground was yelling "no, no, don't." The witness "saw some sparks" and heard two gunshots. Although she knew a shooting had just occurred, she did not see a gun.
The witness drove away and called 911. She then drove back to the area of 7th Street and 13th Avenue and saw the two men involved in the shooting walking down the street in front of her. She recognized the shooter as the man who had a "long length of dreads." The other man had close cut hair. The witness went to the police station that night to give a statement. She described the suspects as black males, both about 5'7" or 5'8" in height, wearing white T-shirts. Approximately two months later, the witness was shown a *844 photo array, and she selected defendant's picture, identifying him as the shooter. She also identified defendant at trial as the man who fired the shots.
Detective Keith Sheppard of the Newark Police Department was assigned to investigate Newkirk's murder. In the course of his investigation, Sheppard brought in a seventeen-year-old juvenile for questioning. On September 7, 2006, two months after the shooting, the juvenile signed a written statement indicating he had witnessed the shooting of Newkirk, whom he referred to as "the Crip dude." In the statement, he identified defendant as the shooter. He also selected defendant's photo from an array prepared by the detective. He knew defendant on the street by the name "Snap." The juvenile said, however, that at the time of the incident, "Snap" was wearing "a gold thermal, long sleeve, blue jeans, construction Timberland boots." At the time of the shooting, the juvenile was wearing a white T-shirt.
At trial in May 2008, the juvenile, now an adult, testified that he was a witness to the shooting but did not see who killed Newkirk. He further testified that Detective Sheppard demanded the juvenile "give him Snap," and he only gave the statement implicating defendant so that Sheppard would "stop hitting [him] so [he] could go home."
Defendant elected not to testify and did not present any witnesses.
The jury acquitted defendant of murder and possession of a weapon for an unlawful purpose, but convicted him of possession of a handgun without a permit. Because of defendant's extensive prior record, the court granted the prosecution's motion for a discretionary extended term sentence under N.J.S.A. 2C:44-3a and sentenced him within the second-degree range to seven years' imprisonment, in addition to statutory money penalties. This appeal followed.
On appeal, defendant contends:
POINT I
THE TRIAL COURT'S INSTRUCTIONS AND THE PROSECUTOR'S COMMENTS DURING SUMMATION THAT THE STATE WAS PRECLUDED FROM ASKING DET. SHEPPARD ABOUT HOW HE LINKED SNAP TO THE SHOOTING ERRONEOUSLY CIRCUMVENTED THE LIMITATIONS OUTLINED IN STATE V. BANKSTON, 63 N.J. 263 [307 A.2d 65] (1973) AND STATE V. BRANCH, 182 N.J. 338 [865 A.2d 673] (2005), AND DEPRIVED MR. JOHNSON OF HIS RIGHTS TO CONFRONTATION AND DUE PROCESS.
POINT II
MR. JOHNSON WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BECAUSE THE STATE INTRODUCED A PRIOR INCONSISTENT STATEMENT OF ITS OWN WITNESS WITHOUT SATISFYING THE REQUIREMENTS OF N.J.R.E. 803(a)(1).
POINT III
ESPECIALLY IN THE CONTEXT OF THIS CASE, WHERE THE JURY ERRONEOUSLY HEARD THAT MR. JOHNSON WAS INVOLVED IN THE SHOOTING, THE TESTIMONY BY DET. SHEPPARD THAT HE HAD MR. JOHNSON'S PHOTOGRAPH IN A "MUG MASTER" DATABASE FURTHER IMPLICATED MR. JOHNSON AS A CRIMINAL BASED ON FACTS OUTSIDE OF THE EVIDENCE ADDUCED AT TRIAL AND DEPRIVED MR. JOHNSON OF A FAIR TRIAL.
POINT IV
THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A *845 MANIFESTLY EXCESSIVE SENTENCE.
We find merit in Points I and III and conclude that the errors were prejudicial to a fair trial. We reverse defendant's conviction and remand for a new trial.

II.
Before proceeding to the meritorious points raised by defendant, we comment briefly on his other point of trial error. In Point II, defendant contends he was prejudiced when the court admitted in evidence the juvenile's written statement, which was contrary to his trial testimony.
N.J.R.E. 803(a)(1) provides for the admission of a prior inconsistent statement of a witness but restricts the circumstances under which such a statement may be offered by the party that called the witness to testify. The rule states that a prior inconsistent statement is admissible when offered by the party who called the witness only if:
it (A) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability or (B) was given under oath subject to the penalty of perjury at a trial or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition[.]
Here, the juvenile was the State's witness. His prior inconsistent statement to police was not given under oath. Therefore, the State was required to demonstrate "circumstances establishing its reliability." See N.J.R.E. 803(a)(1)(A).
Before the juvenile was called to testify, the court held a hearing outside the presence of the jury to determine the reliability of his statement. Reviewing the evidence in light of the factors set forth in State v. Gross, 121 N.J. 1, 10, 577 A.2d 806 (1990), the court concluded in a detailed oral decision that the statement was reliable.
On appeal, defendant challenges the court's findings on the Gross factors and argues the State failed to establish the reliability of the prior statement. In particular, defendant contends the juvenile was coerced by police into making the statement and may have been impaired because he smoked marijuana earlier in the day before giving the statement.
The evidence before the court was largely testimonial. In concluding that the statement was reliable and therefore admissible, the court made credibility findings in favor of the State's witnesses and against the juvenile's version of events at the time of trial. Those findings are entitled to deference. State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999).
We find no error in the admission of the juvenile's prior inconsistent statement under N.J.R.E. 803(a)(1).

III.
Defendant argues prejudicial violation of the Supreme Court's directives regarding police testimony as set forth in State v. Bankston, 63 N.J. 263, 307 A.2d 65 (1973), and State v. Branch, 182 N.J. 338, 865 A.2d 673 (2005). He contends "the trial court's instructions and the prosecutor's comments during summation that the State was precluded from asking Detective Sheppard about how he linked Snap to the shooting erroneously circumvented the limitations outlined in [Bankston and Branch], and deprived [him] of his rights to confrontation and due process." We agree.
Prior to trial, defendant unsuccessfully moved for discovery of the identity of the informant that led police to question the juvenile about the shooting. After the juvenile testified that Detective Sheppard *846 physically assaulted him to "give up Snap," the prosecution asked the court to instruct the jury that it was precluded under the rules of evidence from asking Sheppard what information he had obtained leading him to use defendant's picture in the photo array. The court ruled it would give the jury such an instruction.
The prosecutor then made the following remarks in summation:
By the way, you're going to hear from the Judge I was not permitted under our Rules of Evidence to ask Keith Sheppard what he knew, what information he had before he put the photo display together. Under our case law that's not allowed for the Prosecutor to do that. But it is allowed for [defense counsel], if she chooses to, to ask those questions. And in this case she did. And, of course, he knew he had information. Why would you put six photos together logically? Why would you ever put six photos together for someone to look at if you didn't have some idea who you were looking for? You just going to take six photos randomly from the computer and just show them to somebody? Of course not.
Subsequently, over defendant's objection, the court gave the jury the following instruction:
Due to limitations of the Rules of Evidence, the State was not allowed to ask on direct examination questions as to what, if anything, Detective Sheppard told [the juvenile] about his information relating to the identity of the shooter.
In Bankston, supra, 63 N.J. at 268, 307 A.2d 65, the Court stated: "It is well-settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so `upon information received.'" However, "[w]hen the logical implication to be drawn from [the witness's] testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." Id. at 271, 307 A.2d 65.
In Branch, supra, 182 N.J. 338, 865 A.2d 673, the Court considered the holding of Bankston in the context of testimony regarding photo arrays. The Court stated:
Why the officer placed the defendant's photograph in the array is of no relevance to the identification process and is highly prejudicial. For that reason, we disapprove of a police officer testifying that he placed a defendant's picture in a photographic array "upon information received." Even such seemingly neutral language, by inference, has the capacity to sweep in inadmissible hearsay. It implies that the police officer has information suggestive of the defendant's guilt from some unknown source.
[Id. at 352, 865 A.2d 673.]
The Court recognized an exception, however, for "invited error" by the defendant:
The exception would be the defendant who opens the door by flagrantly and falsely suggesting that a police officer acted arbitrarily or with ill motive. In such a circumstance, the officer might be permitted to dispel that false impression, despite the invited prejudice the defendant would suffer.
[Ibid.]
Here, the jury charge and the prosecutor's summation remarks violated Bankston and Branch because they implied that the State had additional information about defendant's guilt from an undisclosed source. That this inference was created by the prosecutor's summation and the court's instruction to the jury, rather than a police officer's testimony, *847 makes it no less prejudicial. The prosecution could not circumvent the holdings of Bankston and Branch by suggesting to the jury information it could not have elicited directly from Detective Sheppard.
The State argues that the doctrine of invited error should excuse the reference because defense counsel "opened the door" when she argued to the jury that Sheppard "both wanted and forced [the juvenile] to finger Snap." In particular, the State focuses on defense counsel's cross-examination of the juvenile, during which she elicited testimony that Sheppard told him "Snap" was involved and demanded he "give him Snap." However, the juvenile had already testified on direct examination that he was physically assaulted by Sheppard before giving the statement. Defense counsel's cross-examination did not "flagrantly and falsely suggest," without any basis in the evidence, that the police had acted arbitrarily in choosing defendant as the person to be charged with these crimes. See Branch, supra, 182 N.J. at 352, 865 A.2d 673. Rather, the direct testimony of the State's own witness suggested the possibility that the police procured a false identification of defendant, and defense counsel simply followed up on that point.
Moreover, even if we were to apply the doctrine of invited error, the prosecutor's argument in summation went beyond appropriate rebuttal. By arguing that Sheppard "knew he had information" about defendant's potential involvement in the crime before questioning the juvenile, the prosecutor improperly suggested that the State had additional evidence about defendant's guilt that was not presented to the jury. See Branch, supra, 182 N.J. at 352, 865 A.2d 673.
The clear violation of the hearsay prohibition set forth in Bankston and Branch entitles defendant to a new trial.

IV.
Defendant also argues he was prejudiced when Detective Sheppard testified that he obtained his picture for the photo array from a "Mug Master" database.
The prosecutor was aware that reference to "mug shots" must be avoided by police witnesses, but apparently Detective Sheppard was not. During direct examination of Sheppard, the prosecutor went to sidebar seeking permission to ask leading questions regarding how the photo array was assembled. Specifically, he wanted to elicit testimony from Sheppard that the female witness to the shooting was shown six separate photos, rather than all the photos being placed together. He asked for "a little latitude" to avoid Sheppard making reference to a mug shot database. Even though the witness had previously been instructed to avoid such a reference, the prosecutor wanted to "exercise an abundance of caution."
Despite the caution discussed at sidebar, the prosecutor's questioning led Detective Sheppard to prejudicial testimony as follows:
Q. Detective, in preparing the photo displays am I correct that you go to a database that you have in your office where you can, on a computer, pull up the photographs? Is that correct?
A. Yes. That's called the Mug Master.
Q. And is that what you did in this case; you pulled up photos from a database?
A. That is correct.
Defendant did not object to this testimony or ask for a curative instruction.
"[W]hen a defendant does not testify, the State cannot, in the ordinary circumstance, refer to his criminal record." State v. Taplin, 230 N.J.Super. 95, 99, 552 *848 A.2d 1015 (App.Div.1988). "If proof is nevertheless adduced which permits the jury to infer that he has a criminal record, defendant cannot but be prejudiced and, in effect, deprived of the benefit he anticipated in deciding not to testify." Ibid. In particular, references to mug shots are generally impermissible because they imply a criminal record. State v. Cribb, 281 N.J.Super. 156, 160, 656 A.2d 1279 (App. Div.1995). However, "solitary, fleeting references [to mug shots] generally will not constitute reversible error." State v. Harris, 156 N.J. 122, 173, 716 A.2d 458 (1998).
Because defendant did not object to Sheppard's testimony or request a curative instruction, the plain error standard of review applies. Under that standard, a conviction will be reversed only if the error was "clearly capable of producing an unjust result." R. 2:10-2. The error must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached[.]" State v. Taffaro, 195 N.J. 442, 454, 950 A.2d 860 (2008); State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
Here, as part of the final jury charge, the court instructed the jury in conformity with Model Jury Charge (Criminal), "IdentityPolice Photos" (1992).[1] While this instruction may be useful in avoiding jury speculation about the source of police photos, it was not sufficiently effective in curing Sheppard's overt reference to a database of mug shots.
Although Sheppard's single reference to the "Mug Master" database may not, standing alone, have constituted reversible error, in combination with the Bankston/Branch violations we have discussed, the improper reference prejudiced defendant's right to a fair trial. See State v. Wakefield, 190 N.J. 397, 538, 921 A.2d 954 (2007), cert. denied, 552 U.S. 1146, 128 S.Ct. 1074, 169 L.Ed.2d 817 (2008) ("where `legal errors ... in their aggregate have rendered the trial unfair, our fundamental constitutional concepts dictate the granting of a new trial'") (quoting State v. Orecchio, 16 N.J. 125, 129, 106 A.2d 541 (1954)).
The reference suggested to the jury that defendant had a criminal record, adding to the inference improperly argued in summation and reinforced in the court's instructions that the State had additional information about defendant's guilt that it was not permitted to put in evidence. The error compounded the prejudice to defendant and tainted the jury's evaluation of the admissible evidence.
Reversed and remanded for a new trial.
NOTES
[1] The court charged the jury as follows:

There are in evidence photographs that were used to identify the defendant in this case. With reference to the photographs submitted into evidence you will notice that many or all of the photographs appear to have been taken by a law enforcement agency or some other government entity. You are not to consider the fact that the agency obtained a photograph of the defendant as prejudicing him in any way. The photographs are not evidence that the defendant has ever been arrested or convicted of any crime. Such photographs come into the hands of law enforcement from a variety of sources, including but not limited to, driver license applications, passports, ABC identification cards, various forms of government employment, private employment requiring state regulation, including but not limited to, casino license applications, security guard applications, et cetera, or for many other variety of other sources totally unconnected with criminal activity.