NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2698
_____

LUIS BATIZ;
CORDELIA CHALLENGER,
                              Appellants
v.

M.D. BROWN, NEW JERSEY STATE TROOPER #7090;
D.K. DETULLIO, NEW JERSEY STATE TROOPER  #7193;
JOHN DOES NEW JERSEY STATE POLICE TROOPERS 1-5
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-12-cv-00581)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 18, 2017

Before: FISHER, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 25, 2017)
_____

OPINION*
_____

_____

   *This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Luis Batiz and Cordelia Challenger appeal the District Court's order dismissing their claims against members of the New Jersey State Police. We will affirm.

I

On February 23, 2010, Luis Batiz called the New Jersey State Police to aid in a repossession dispute with storage company 1-800-PACKRAT. Pack Rat employees were attempting to repossess a storage pod used by Batiz because he was allegedly several months behind on payments. Before the state troopers arrived, Batiz took Pack Rat's lifting bar—a device needed to lift the pod onto the Pack Rat truck—and his wife Cordelia Challenger blocked the Pack Rat truck with her car.

Two state troopers arrived at the Batiz residence, which they described as a "chaotic scene." App. 87. State Trooper D.K. Detullio attempted to defuse the situation by permitting Batiz "to remove his personal belongings from the storage pod and allow[ing] Pack Rat to leave with it." App. 7. Detullio also instructed Batiz to return the lifting bar. Although Batiz complied with these instructions, he was displeased and felt that Detullio did not have the authority to interfere in a civil dispute.

While on the scene, Detullio asked Batiz and a Pack Rat employee for identification, which Detullio described as "common practice." App 107. Batiz refused, saying: "I don't see the purpose of giving you that information." Supp. App. 108. After several more requests, Batiz became "very, very paranoid" and said, "all I'm going to give you is my name." Supp. App. 110. When Detullio insisted on obtaining Batiz's

2

identifying information, Batiz declared: "I need you to leave and I need you to leave right now." Supp. App. 112. Detullio then placed Batiz under arrest. At the police station, Batiz continued to refuse to provide any identification and would not allow police to photograph or fingerprint him.

While Batiz was in custody, Challenger drove to the precinct and was asked to identify Batiz. She responded: "Well if he's there, you have to get information from him. I'm not giving it to you." Supp. App. 283. She was then handcuffed to a bench and released one hour later.

That same day, Detullio filed a criminal complaint charging Batiz with four offenses under New Jersey state law: theft, obstructing administration of law, hindering apprehension, and disorderly conduct. Detullio obtained a warrant for Batiz's arrest from a New Jersey municipal court judge and Batiz was committed to county jail on that warrant. For her role in the incident, Challenger was charged with hindering apprehension.

On August 4, 2010, Batiz and Challenger were tried in New Jersey municipal court. Batiz was convicted of theft, obstruction, and disorderly conduct, but he and Challenger were acquitted of the hindering apprehension charges. The New Jersey Superior Court, Law Division, granted a trial de novo and convicted Batiz solely on the theft charge. But the Appellate Division of the New Jersey Superior Court reversed that conviction, reasoning that Batiz was entitled to temporarily seize the lifting bar to prevent Pack Rat from taking his property.

3

Having been fully acquitted of all criminal charges, Batiz and Challenger filed this civil lawsuit against State Troopers Detullio and M.D. Brown pursuant to 42 U.S.C. § 1983. Batiz and Challenger asserted claims of false arrest, false imprisonment, malicious prosecution, abuse of process, and conspiracy to deprive civil and constitutional rights. On summary judgment, the District Court dismissed all but Batiz's malicious prosecution claims. After trial on those claims, the District Court granted Detullio's motion for a directed verdict. Batiz and Challenger filed this appeal.

## II[1]

We exercise plenary review over both the District Court's summary judgment, *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001), and its directed verdict, *Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir. 1987).

## A

Challenger alleges that the District Court erred in granting summary judgment on her false arrest claim. She claims there was no probable cause to detain her on hindering charges because her refusal to identify Batiz falls outside the plain language of the statute. Under New Jersey law, a person commits the crime of hindering apprehension if: "with purpose to hinder the detention, apprehension, investigation, prosecution, conviction or punishment of another, . . . [she s]uppresses, by way of concealment or destruction, any evidence of the crime . . . which might aid in the discovery or

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

apprehension of such person or in the lodging of a charge against him." N.J. Stat. Ann. § 2C:29-3(a), (a)(3).

The District Court entered summary judgment for two independent reasons. First, it explained that a "reasonable person would have determined that [Challenger] was refusing to provide [the requested] evidence of her husband's identity, while knowing her husband was being investigated, for purposes of hindering the troopers' investigation of him." App. 22. Whether or not this holding is correct, we readily agree with the District Court's second holding that Challenger's suit was barred by qualified immunity.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bayer v. Monroe Cty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," *Pearson*, 555 U.S. at 231 (internal quotation marks omitted), and protects "all but the plainly incompetent or those who knowingly violate the law," *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Detullio is protected by qualified immunity. Challenger concedes that there is no caselaw considering whether "refusing to provide the name and pedigree information of another is a violation of [the] statute." App. 22. This concession is fatal to Challenger's

claim because the Supreme Court has explained that qualified immunity applies unless "'existing precedent . . . placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 563 U.S. at 741 (2011)).

Challenger argues that she need not cite on-point precedent because "the plain language of the applicable statute provides no basis for charging an individual under the facts at issue." Batiz Br. 14. But even assuming that the plain language does not provide a basis for charging Challenger—meaning that Detullio committed a mistake of law—that reading of the statute is sensible enough that Detullio cannot be said to have been "plainly incompetent" or to have "knowingly violate[d] the law." *Mammaro*, 814 F.3d at 168.

B

Batiz next challenges the District Court's summary judgment on his malicious prosecution claim related to the theft charge. Batiz claims a jury could have found that Detullio lacked probable cause to believe he took the lifting bar "with purpose to deprive." N.J. Stat. Ann. 2C:20-3(a). As relevant here, "deprive" is defined as "to withhold or cause to be withheld property of another permanently . . . or with purpose to restore only upon payment of reward or other compensation." N.J. Stat. Ann. 2C:20-1.

We agree with the District Court that Detullio had probable cause to believe Batiz took the bar with purpose to deprive. The undisputed facts establish that: Pack Rat employees (not Batiz) informed Detullio that the lifting bar had been taken; Detullio was

aware Batiz took the lifting bar in an effort to stop Pack Rat's repossession of the storage pod; and Batiz did not return the lifting bar until Detullio ordered him to do so. The District Court correctly explained that it was reasonable for Detullio "to believe that, even if Batiz intended to return the lifting bar upon Pack Rat's agreement to depart without repossessing his storage pod, that this was done 'with purpose to restore' the lifting bar to Pack Rat 'only upon payment of reward or other compensation,' compensation, in that case, being fulfilled by Pack Rat foregoing its perceived right to repossess the storage pod." App. 18–19.

Instead of disputing these conclusions, Batiz argues that the District Court "ignored those facts that called into question whether probable cause existed." Batiz Br. 17. Essentially, Batiz argues that the District Court overlooked evidence that he took the lifting bar only to prevent Pack Rat from taking what he considered his own property. But under New Jersey law, this "claim of right" argument is an affirmative defense. *See State v. Ippolito*, 671 A.2d 165, 168 (N.J. Super. Ct. App. Div. 1996) (citing N.J. Stat. Ann. 2C:20-2(c)(2)). And we have held that if an affirmative defense is "not clear cut" and "essentially an issue of fact," that defense "should not concern an arresting officer" when considering probable cause. *Holman v. City of York*, 564 F.3d 225, 231 (3d Cir. 2009); *see also Sands v. McCormick*, 502 F.3d 263, 269 (3d Cir. 2007) (police officers need not consider possible statute of limitations defenses when determining probable cause). Here, Officer Detullio could not have reasonably been expected to resolve this complicated argument and its attendant factual predicates at the scene. *See Holman*, 564 F.3d at 231.

7

Therefore, Detullio had probable cause to arrest Batiz, which dooms this malicious prosecution claim.

C

Batiz also appeals the District Court's directed verdict on his malicious prosecution claim related to the hindering and disorderly conduct charges. To state a claim for malicious prosecution, a plaintiff must show, among other things, that "the defendant initiated the proceeding without probable cause" and that "the plaintiff suffered deprivation of liberty." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). When the arrest is made on multiple charges, "probable cause on one charge does not foreclose a malicious prosecution cause of action against a defendant for having brought criminal charges involving different elements." *Id.* at 83 (citations omitted). In such cases, however, the plaintiff must show that "the additional charges for which there might not have been probable cause . . . resulted in additional restrictions on his liberty beyond those attributable to the prosecution on the [] charges for which there was probable cause." *Id.* at 86.

Batiz was charged with theft, obstruction, hindering, and disorderly conduct. He concedes that probable cause existed as to the obstruction charge, and we explained herein why probable cause existed on the theft charge. Therefore, Batiz must show that the hindering and disorderly conduct charges—for which the District Court found a factual dispute with respect to probable cause—caused an additional deprivation of liberty.

8

Batiz alleges that absent these purportedly improper charges, the municipal court judge would have charged him on a summons rather than a warrant—meaning that he would not have been held in jail after being charged. He cites to the New Jersey Court Rules, which provide that a summons, rather than a warrant, should be issued unless the defendant "cannot be satisfactorily identified" or "there is reason to believe that the defendant will not appear in response to a summons." N.J. Ct. R. 7:2-2(b)(5), (6). Applying these rules to his case, Batiz claims that Detullio's exaggerations caused the municipal court judge to falsely believe that Batiz could not be satisfactorily identified or would not appear on a summons.

Batiz cannot carry his burden to prove this claim. As the District Court noted, "[t]here was no evidence presented of any kind" to substantiate Batiz's claim that the municipal court judge would have issued a summons without the allegedly infirm charges. App. 192. Batiz did not offer any "expert testimony [] concerning the practices and procedures in municipal court." App. 192. And any direct evidence from the municipal court judge was not discoverable. *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (explaining that judges are not subject to examination at trial). Because any verdict in Batiz's favor would have been based on pure speculation by the jury as to the decisionmaking process of the municipal judge, the District Court properly granted a directed verdict. *See Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[W]hen the matter remains one of pure speculation or conjecture, . . . it becomes the duty of the court to direct a verdict for the defendant." (citations omitted)).

9

\*      \*      \*

For the reasons stated, we will affirm the judgment of the District Court.